A10A2190. CHANEY v. HARRISON & LYNAM, LLC.
A11A0195. CHANEY v. HARRISON & LYNAM, LLC et al.
(708 SE2d 672)

ADAMS, Judge.

In Case No. A10A2190, Justin Chaney asserts that the trial court erred in denying, on reconsideration, his motion for summary judgment on claims of defamation, tortious interference with business relations, conspiracy and punitive damages, filed against him by Harrison & Lynam, LLC ("H & L"). In Case No. A11A0195, Vanessa Chaney asserts that the trial court erred in denying, on reconsideration, her motion for summary judgment on similar counterclaims asserted by H & L in response to a suit she filed against Michael T. Lynam, Charles C. Harrison and H & L for breach of contract, breach of warranty, nuisance, negligent construction, negligence per se, and fraud in connection with the construction of the Chaneys' home. For the reasons set forth below, we reverse the denial of the Chaneys' motions for summary judgment and affirm the denial of Justin Chaney's motion to join Harrison and Lynam as defendants in counterclaim.

On or about April 29, 2003, the Chaneys contracted to buy a house built by H & L in the City of Atlanta. In October 2003, prior to the closing on the house, H & L sent the Chaneys a property disclosure statement acknowledging that the property had "present drainage or flooding problems." H & L asserts that it took some steps prior to the closing to direct rainwater away from the Chaneys' property, and the Chaneys contend that they relied upon the company's assurances that the problems had been fixed in deciding to close the transaction. At or around the time of the closing in January 2004, H & L personnel noticed that stormwater from an adjacent road was collecting on the Chaneys' property. H & L undertook to correct the problem by building a catch basin at the company's expense, although the company asserts that it was not contractually obligated to make the repairs.

These measures apparently did not solve the drainage problems, and later in 2004, H & L gave the Chaneys and their neighbors a written proposal to address the problem. H & L subsequently replaced a grating at the Chaneys' catch basin and made adjustments to the basin. But the Chaneys remained dissatisfied with the company's efforts. And at some point, they began to question whether the City of Atlanta also bore some responsibility for their drainage problems.

In September 2005, when the drainage issue remained unresolved, the Chaneys posted a sign in their yard reading, "ASK OUR OPINION WHY NOT TO BUY A HARRISON & LYNAM HOME." A number of the Chaneys' neighbors erected similar signs. Keith Sharp, a real estate agent who had sold a number of H & L homes in the neighborhood, assisted H & L in trying to resolve the situation. He scheduled a meeting attended by the Chaneys, their neighbors, Harrison, Lynam and an assistant to the City council. A short time later, the Chaneys and their neighbors removed their signs in exchange for what they considered to be a commitment from H & L to address the items remaining on their punch list and to take additional steps to address the drainage issues. Although H & L asserts that it took further action to remedy the drainage problems, the Chaneys and their neighbors remained dissatisfied.

Accordingly, on July 23, 2006, a day on which H & L had scheduled an open house in the neighborhood, the Chaneys and their neighbors re-erected their signs. Two days later, on July 25, Justin Chaney sent an e-mail to six City officials suggesting that the City had responsibility for the drainage problems and stating that he was preparing for litigation against H & L for "the obvious negligent construction concerning drainage on my property" and did not want to have to sue the City as well (the "July 25 E-Mail"). This e-mail also noted that "H & L ha[s] apparently damaged a preexisting

storm drain that lies under the road," an allegation H & L denies. On July 28, 2006, the Chaneys were cited for violating a City sign ordinance, and the next day, Justin Chaney sent an e-mail to his neighbors, stating "my first inclination is not to take your sign down until the work was complete and — but I am open to any ideas. I think [H & L is] feeling the pain with the two houses they've been sitting on across from us" (the "July 29 E-Mail").

Then, on July 31, 2006, Justin Chaney sent a letter to the City of Atlanta to the attention of a City zoning inspector, with copies to four City officials, including the mayor and a councilwoman, in response to the sign ordinance citation. The letter stated that his neighbors and he had formed a political action committee ("PAC") with the stated intention to "educate prospective home buyers of alleged negligent construction and breach of contract issues" involving H & L (the "July 31 Letter"). The letter argued that as a result, their signs should be considered more in the nature of campaign signs and thus subject to less stringent requirements. And on August 10, 2006, Justin Chaney sent a letter to real estate agent Sharp's broker, seeking to ensure that Sharp disclose their claims of "negligent construction" and "pervasive shoddy workmanship" by H & L to prospective buyers (the "August 10 Letter").

H & L filed suit against Justin Chaney[1] that same day. Chaney counterclaimed asserting claims arising out of the construction of the house. Justin Chaney subsequently moved to add Harrison and Lynam, individually, as defendants to his counterclaim and also moved for summary judgment on H & L's claims. Vanessa Chaney filed her complaint against H & L, Lynam and Harrison on January 3, 2008, and the defendants filed their counterclaim in response. Vanessa Chaney subsequently moved for summary judgment on the counterclaim.

The trial court initially granted both of the Chaneys' motions for summary judgment, and denied Justin Chaney's motion for joinder of parties. But in granting summary judgment to the Chaneys, the trial court limited its analysis to the Chaneys' yard sign. H & L moved for reconsideration, noting that their claims also addressed allegedly defamatory e-mails and correspondence, in addition to the sign. The motion additionally asked for reconsideration of the finding that the sign was not defamatory. Justin Chaney also moved for reconsideration of the denial of his motion to add parties.

On reconsideration, the trial court again denied Justin Chaney's motion for joinder but reversed its earlier position and denied both

---

[1] H & L also named as defendants a number of the Chaneys' neighbors who had also erected signs, but H & L later settled those claims.

Chaneys' motions for summary judgment without explanation. The trial court certified these orders for immediate review, and this Court granted the Chaneys' applications for interlocutory appeal. The cases were later consolidated for appeal.

1. *Defamation* — The Chaneys assert that the trial court erred in denying their motions for summary judgment on H & L's defamation claim. H & L asserts claims based upon the Chaneys' yard sign and by extension their communications with prospective buyers in connection with the sign. H & L also asserts a claim for defamation based upon letters and e-mails sent by Justin Chaney.

> To establish a cause of action for defamation, a plaintiff must submit evidence of (1) a false and defamatory statement about himself; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special damages or defamatory words "injurious on their face." [Cit.]

*Lewis v. Meredith Corp.*, 293 Ga. App. 747, 748 (1) (667 SE2d 716) (2008).

(a) *Yard Sign* — The Chaneys' yard sign invited the public at large to ask the Chaneys' "opinion why not to buy a Harrison & Lynam home." The Chaneys contend the sign is not defamatory because it is simply a statement of their opinion. H & L counters that the sign is actionable because it implies "defamatory facts." See *Bellemeade, LLC v. Stoker*, 280 Ga. 635, 638 (631 SE2d 693) (2006), citing *Milkovich v. Lorain Journal Co.*, 497 U. S. 1, 18-21 (110 SC 2695, 111 LE2d 1) (1990).

As a general rule, a mere statement of opinion is not considered defamatory, and

> a defamation action will lie only for a statement of fact. This is because a statement that reflects an opinion or subjective assessment, as to which reasonable minds could differ, cannot be proved false. As a result, a plaintiff who claims that a published opinion defamed him will generally be unable to carry his burden of proving the essential element of falsity.

(Footnote omitted.) *Gettner v. Fitzgerald*, 297 Ga. App. 258, 261 (1) (a) (677 SE2d 149) (2009). See also *Kendrick v. Jaeger*, 210 Ga. App. 376, 377 (436 SE2d 92) (1993) ("[T]he expression of opinion on matters with respect to which reasonable men might entertain differing opinions is not libelous. An assertion that cannot be proved false cannot be held libelous.") (citation and punctuation omitted);

*Bergen v. Martindale-Hubbell*, 176 Ga. App. 745, 747 (3) (337 SE2d 770) (1985) ("wholly subjective" statement "not capable of proof or disproof" does not constitute defamation). Nevertheless,

> [t]here is . . . no wholesale defamation exception for any-
> thing that might be labeled "opinion." An opinion can
> constitute actionable defamation if the opinion can reason-
> ably be interpreted, according to the context of the entire
> writing in which the opinion appears, to state or imply
> defamatory facts about the plaintiff that are capable of
> being proved false.

(Punctuation and footnotes omitted.) *Gast v. Brittain*, 277 Ga. 340, 341 (589 SE2d 63) (2003).

Applying these principles, we conclude that the Chaneys' sign does not constitute defamation. The sign itself does not even express an opinion; rather, it is an invitation to ask the Chaneys for their opinion. At most, the sign implies that the Chaneys have a negative opinion of H & L homes, but it is too far of a stretch to interpret the sign as implying "defamatory facts" about H & L as nothing in the sign connotes anything that is "sufficiently factual to be susceptible of being proved true or false." *Bellemeade, LLC v. Stoker*, 280 Ga. at 638.

The case of *Janet Ricker Builder, Inc. v. Gardner*, 244 Ga. App. 753 (536 SE2d 777) (2000) is instructive. Gardner was unhappy with the construction of a home she purchased from Ricker. She asked Ricker to make immediate repairs, and if repairs were not made, Gardner stated that she could "mess up" the sale of other homes in the subdivision. Id. at 754. Gardner subsequently placed signs on her property expressing her dissatisfaction with the home's construc-tion, including a sign in her front window reading, "This lemon is for sale. Built by Janet Ricker Builder, Inc." Id. Ricker sued Gardner for defamation and tortious interference with business relations. This Court concluded that Gardner's statement that the house was a "lemon" was "a constitutionally protected expression of opinion" in affirming the trial court's grant of summary judgment as to the claim of tortious interference.[2] Id. at 756 (4). See also *Elder v. Cardoso*, 205 Ga. App. 144, 144-145 (1) (421 SE2d 753) (1992) (no viable claim for slander where appellees expressed opinion as to appellant's professional abilities and "merely attempted to 'dis-suade' or 'discourage' their patients" from selecting appellant). The Chaneys' sign was even less explicit than Gardner's and thus it, too,

---

[2] Ricker apparently did not argue error in the grant of summary judgment on the defamation claim. *Janet Ricker Builder v. Gardner*, 244 Ga. App. at 754.

must be considered protected speech.

(b) *Conversations with potential buyers* — Although the Chaneys' sign invited passers-by to ask their opinion, H & L presented no evidence from any individual who took them up on their offer or from any individual who otherwise spoke with the Chaneys about H & L. Instead, H & L relies upon the affidavit of real estate agent Sharp, who averred that prospective customers had remarked on the signs and indicated that their decision not to buy a home in the subdivision was influenced by the signs and "comments made by those who erected the signs." He also cites one unidentified customer who supposedly terminated a purchase contract, in part because of the signs and comments.

But H & L failed to demonstrate that these unidentified customers ever spoke to the Chaneys and further failed to identify any defamatory statements the Chaneys supposedly said to them. In fact, Sharp stated in his deposition that he did not recall any person telling him that either Vanessa or Justin Chaney had said anything about H & L.[3] "To establish a cause of action, the defamatory statement must be published[, and a] plaintiff cannot prove publication without introducing evidence of the specific statement used in an allegedly defamatory communication." (Citations omitted.) *Lewis v. Meredith Corp.*, 293 Ga. App. at 749 (1).

Rather, the only admissible evidence in that regard comes from the Chaneys themselves. Vanessa Chaney stated that she spoke with approximately five people, but only told them that they were having drainage issues. When she heard her husband talking to people, she only heard him say that they were having drainage issues. Justin Chaney averred that he had never approached any person about H & L homes other than his neighbors, who were originally named as co-defendants in this case. He advised his neighbors that he would confine any comments in response to the signs to the facts, without exaggeration, and advised them to do the same. He indicated he had individuals who approached his home in response to the sign, but he was careful to limit his conversation "to the fact that the property has a drainage problem, the house had unfinished punch list items and [H & L] built the house." It is unclear from the record when these conversations occurred.

H & L apparently does not dispute that the Chaneys continue to

---

[3] Moreover, to the extent that H & L offers this affidavit for the truth of the prospective customers' statements as to why they chose not to buy a house in the subdivision, it is hearsay and "wholly without probative value" for purposes of summary judgment. (Citation omitted.) *Jones v. O'Day*, 303 Ga. App. 159, 163 (692 SE2d 774) (2010). See also *ULQ, LLC v. Meder*, 293 Ga. App. 176, 183 (5) (666 SE2d 713) (2008) ("[H]earsay cannot be considered on summary judgment.") (citation and punctuation omitted).

have drainage issues on their property. Further, Justin Chaney testified that at the time they agreed to remove their sign in September 2005, they had a long punch list of items that remained to be completed. At his deposition, Chaney could only recall that H & L had never furnished an engineering letter and had never fixed a heat lamp in their bathroom. Vanessa Chaney also testified that they had unfinished punch list items, citing again the nonfunctioning bathroom lamp. H & L has pointed us to no evidence contradicting these statements. Accordingly, the Chaneys' conversations arising from the sign cannot be considered defamatory as such conversations apparently addressed only factually true information. See OCGA § 51-5-6 ("The truth of the charge made may always be proved in justification of an alleged libel or slander.").

(c) *Justin Chaney's Letters and E-Mail* — H & L also alleges defamation in the following e-mail and letters from Justin Chaney: (i) the July 25 E-Mail to six City officials asserting that he was preparing for litigation against H & L for "obvious negligent construction concerning drainage on my property" and asserting that H & L "apparently" had damaged a storm drain; (ii) the July 31 Letter stating his PAC's intention to educate prospective homeowners of "alleged negligent construction and breach of contract issues"; and (iii) the August 10 Letter to the real estate broker complaining about the failure to disclose "negligent construction" and "pervasive shoddy workmanship."

Justin Chaney claims privilege for these communications under OCGA § 51-5-7 (2), (3), and (4). Under subsection (2), "[s]tatements made in good faith in the performance of a legal or moral private duty" are deemed privileged. Subsection (4) protects "[s]tatements made in good faith as part of an act in furtherance of the right of free speech or the right to petition government for a redress of grievances under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern. . . ." And under subsection (3) privilege cloaks "[s]tatements made with a good faith intent on the part of the speaker to protect his or her interest in a matter in which it is concerned."

Justin Chaney bears the burden of proving his claim of privilege, and

> [i]n reviewing whether summary judgment was appropriate on this ground, we consider whether [Justin Chaney has] established as a matter of law that [he] made privileged statements. To do so, [he] must show good faith, an interest to be upheld, a statement properly limited in scope, a proper occasion and publication to proper persons.

(Punctuation and footnotes omitted.) *Meadow Springs v. IH Riverdale*, 307 Ga. App. 72, 75 (1) (b) (ii) (704 SE2d 239) (2010). See also *Speedway Grading Corp. v. Gardner*, 206 Ga. App. 439, 442 (2) (425 SE2d 676) (1992) (although questions of privilege and malice generally are for the jury, "complete privilege may be established as a matter of law" if defendant establishes "good faith, an interest to be upheld, a statement properly limited in its scope, a proper occasion, and publication to proper persons") (citation and punctuation omitted).

Nevertheless,

> [p]roof that the defendant acted with actual malice in making the statement . . . defeats the defense of privilege. If the privilege is used merely as a cloak for venting private malice and not bona fide in promotion of the object for which the privilege is granted, the party defamed shall have a right of action. OCGA § 51-5-9. Malice to avoid qualified privilege must be actual and with evil intent.

(Citations and punctuation omitted.) *Fine v. Communication Trends*, 305 Ga. App. 298, 303-304 (1) (b) (699 SE2d 623) (2010). Here, H & L claims that Justin Chaney acted with actual malice and would bear the burden of proving such malice at trial. To carry his burden on summary judgment, however, Chaney need only demonstrate "by reference to the affidavits, depositions and other documents in the record" that there is an absence of evidence to support H & L's claim of malice. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Justin Chaney testified in his deposition that his motivation in posting the sign and in his later communications with the City and others was to get his drainage problems resolved. When he first erected the sign, he did not believe that it would have any impact upon H & L because he did not believe that the sign would be up long. Chaney thought that H & L would remedy the problem. But he explained that "the longer it went on, . . . the less progress we were making and it became more and more apparent that . . . maybe [H & L] . . . never intended to fix it. And so — when it became apparent that [H & L was not] going to do anything, . . . I did contact the city."

Chaney explained that he came to believe that the City of Atlanta might bear some responsibility for his drainage issues. He stated that at one point, for example, Lynam told him that the City was directing H & L regarding the steps to take to fix the drainage issues. Chaney stated in his affidavit that his communications with the City first focused upon "convincing the City to take action to correct the problem. Later, these discussions dealt with whether the

measures taken by [H & L] to attempt to correct the problem had been permitted by the City." Still later, he contacted the City after he was cited for violating the sign ordinance and learned that Lynam had filed a complaint in that regard. During that discussion, in response to a direct question, Chaney explained that his dispute with Lynam involved "unresolved drainage issues and punch list issues."

(i) It is apparent from the face of Justin Chaney's July 25 E-Mail that it was written with the intent of getting the City to address the drainage issues and that it was a follow-up to prior discussions regarding the situation. He asks the City to investigate the "negligent construction that has occurred at his residence," and it is unclear whether that refers to H & L or the City's own actions regarding drainage in the area. Although Chaney states in the letter that he may bring suit against H & L for "obvious negligence," he attempts to use that information as an incentive to prod the City into action to avoid being added to the lawsuit. Thus Chaney was communicating with the proper people about a topic as to which he maintained an interest. Moreover, proper drainage of rain water from City roadways is a matter of public interest, and Chaney had a right to seek redress for any grievance in this regard. We find, therefore, that his statements about H & L were properly limited in scope and nothing in the record indicates that they were not made as part of a good faith effort to resolve the drainage issues.[4] See *Speedway Grading Corp. v. Gardner*, 206 Ga. App. at 442 (2) (where appellee resided near landfill on public waterway that could materially affect others, privilege applied to appellee's comment in letter to regulatory authority implying that owner of landfill bribed judge).

(ii) Similarly, his July 31 Letter to City officials concerned the citation he received in connection with posting the sign. Chaney disputed that he had violated any ordinance and indicated that he had formed a PAC along with his neighbors to hold homebuilders to the minimum standards set forth in the applicable building codes. Chaney states that the mission of the PAC is to educate prospective home buyers of "alleged negligent construction and breach of contract issues" as the result of actions by H & L. Chaney testified in his deposition that he did, in fact, register a PAC with the Secretary of State's office, although he did not recall whether he took any further action with regard to the PAC.

---

[4] Although Chaney also states in the letter that H & L "apparently damaged" a pre-existing storm drain, he testified in his deposition that someone who was contracted by the City to look into the situation showed him that a pipe had been damaged and suggested to Chaney that it was done by the builder during excavation on his home. Even though H & L denies damaging the pipe, there is nothing to indicate that Chaney did not make this statement in good faith.

Pretermitting whether a statement indicating that Justin Chaney is merely alleging negligence and breach of contract on the part of H & L can be considered defamatory, we find that nothing in the evidence indicates that the letter was not sent as a good faith response to the citation. The statement about H & L was properly limited in scope and submitted to appropriate recipients. H & L's contention that neither the mayor nor the councilwoman were proper recipients is without merit, as both were City officials and the topic of the letter was Chaney's alleged violation of a City ordinance. Accordingly, we find that Chaney has established privilege as a matter of law with regard to this letter.

(iii) We also conclude that the August 10 Letter to Sharp's broker is privileged. The letter was written to put the broker on notice of the allegations made by the Chaneys and their neighbors of drainage issues caused by the "alleged negligent construction" and "shoddy workmanship" of H & L, and the prospect of impending litigation filed against H & L in this regard. The letter reminds the broker that Sharp has a legal duty to disclose these issues to any prospective buyers of homes in the neighborhood. The letter asserts that Sharp has been aware of these issues since at least September 2005 and questions whether he had been making the required disclosures. Enforcement of Georgia law is a matter of public interest, and it was a proper exercise of Chaney's right of free speech to attempt to ensure that Sharp was complying with the law. The statements regarding H & L were properly limited in their scope as they were intended to put the Chaneys' complaints on the record for the broker, who was the appropriate recipient.[5]

H & L contends, however, that evidence exists that Chaney was not acting in good faith when he made these communications, but rather acted maliciously in an attempt to negatively impact H & L. In support of this argument, H & L points to the events surrounding the re-posting of the signs in July 2006. Chaney testified that when he re-erected his sign in 2006, his intent once again was to get his drainage issues resolved, not to affect H & L's business. He acknowledged that once everyone put up their signs, it was reasonable to assume that H & L's sales probably would be affected, but as he indicated in the August 10 Letter, the signs also had a negative impact on his own property value. When he stated in his July 29 E-Mail to his neighbors that H & L was "feeling the pain" from the signs, he stated that he meant that the company had "incentive to

---

[5] Although the letter shows copies going to the interested neighbors and the Georgia Real Estate Commission, Justin Chaney stated that he did not believe he ever sent the letter to the commission. And H & L has not presented any evidence to establish "publication" to the commission.

remedy" the drainage issues "whether they thought it was the right thing to do or not." H & L has not pointed us to any evidence to contradict this explanation. Moreover, we have found that the signs were a proper exercise of the Chaneys' right to free speech.

Thus even though Chaney may have hoped that his sign would pressure H & L to respond by fixing the drainage on his property, the record indicates that such pressure was part of a "bona fide" effort to promote the object for which the applicable privileges were granted. Chaney had the right to seek resolution of his drainage issues, and his attempts to achieve that end do not evidence the "evil intent" required for actual malice. No evidence of actual malice exists in the record, and "[c]onclusory allegations by the plaintiff of conspiracy, malice, and defamation are insufficient in the absence of substantiating fact or circumstances . . . to raise a material issue for trial." (Citation and punctuation omitted.) *Sherwood v. Boshears*, 157 Ga. App. 542, 544 (278 SE2d 124) (1981).

Thus, the trial court erred in failing to find an absence of malice as a matter of law and in denying the Chaneys' motion for summary judgment as to the defamation claims. See *Fine v. Communication Trends*, 305 Ga. App. at 305 (1) (b) ("Whether a showing of actual malice has been made is an issue to be determined by the trial judge in the first instance, and thus is particularly appropriate for summary resolution.") (citations and punctuation omitted).

2. *Interference with business relations* — The Chaneys also assert that the trial court erred in denying their motions for summary judgment as to H & L's claims of tortious interference with business relations.

> Tortious interference claims, whether asserting interference with contractual relations, business relations, or potential business relations, share certain common essential elements: (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

(Citation omitted.) *Kirkland v. Tamplin*, 285 Ga. App. 241, 243 (1) (645 SE2d 653) (2007). See also *Sommers Co. v. Moore*, 275 Ga. App. 604, 605 (621 SE2d 789) (2005).

H & L argued in support of this claim that the Chaneys had no legitimate reason to solicit H & L's prospective customers in order to

express their "opinion" of the company's work, but we held otherwise in Division 1 above. The Chaneys' posting of the sign was not improper, and H & L failed to present evidence of any other improper communications or any other improper conduct by the Chaneys with regard to prospective customers. Additionally, we found that no evidence exists that the Chaneys acted maliciously in communicating with anyone about H & L. Accordingly, H & L cannot establish at least two of the essential elements of their tortious interference claim, and the Chaneys were entitled to summary judgment. Cf. *Stefano Arts v. Sui*, 301 Ga. App. 857, 862 (2) (690 SE2d 197) (2010) (persuading someone to break a contract insufficient to show tortious interference); *Kirkland v. Tamplin*, 285 Ga. App. at 244 (1) (b) (same).

3. And because H & L cannot establish these underlying torts, their claims for conspiracy and punitive damages were likewise subject to summary adjudication. See *Mustaqeem-Graydon v. SunTrust Bank*, 258 Ga. App. 200, 207 (6) (573 SE2d 455) (2002) (absent underlying tort no liability exists for civil conspiracy); *Boeing Co. v. Blane Intl. Group*, 276 Ga. App. 672, 676 (2) (624 SE2d 227) (2005) (derivative punitive damages claim cannot survive the absence of compensatory damages on underlying claim).

Accordingly, we reverse the trial court's denial of the Chaneys' motions for summary judgment.

4. Justin Chaney also asserts that the trial court erred in denying his motion to add Harrison and Lynam, individually, as parties to his counterclaim, under OCGA §§ 9-11-13 (h) and 9-11-19 (a) (1). That statute provides that "[w]hen the presence of parties other than those to the original action is required for the granting of complete relief in the determination of a counterclaim . . . , the court shall order them to be brought in as defendants as provided in this chapter, if jurisdiction of them can be obtained." "The foregoing is read in conjunction with OCGA § 9-11-19 (a) (1) which provides that '(a) person who is subject to service of process shall be joined as a party in the action if: (1) in his absence complete relief cannot be afforded among those who are already parties.'" *Gardner v. Gardner*, 276 Ga. 189, 190 (1) (576 SE2d 857) (2003).

At issue, therefore, is whether the joinder of Harrison and Lynam is required to afford Justin Chaney complete relief. "This provision 'complete relief' embraces the desirability of avoiding repetitive lawsuits on essentially the same facts or subject matter, as well as the desirability of joining those in whose absence there might be a grant of hollow or partial relief to the parties before the court." (Citations and punctuation omitted.) *Gardner v. Gardner*, 276 Ga. at 190 (1). Chaney's counterclaim asserts claims for breach of contract, breach of warranty, nuisance, negligent construction, negligence per

se, and fraud in connection with building the house. He sought to join Harrison and Lynam to the counterclaim on the ground that they oversaw the allegedly negligent construction and individually made numerous fraudulent representations. He asserted that jurisdiction and venue were proper in the trial court because Harrison and Lynam were joint tortfeasors with H & L. Chaney does not assert, however, that Harrison and Lynam have any kind of vicarious liability for H & L or that H & L's finances are commingled with theirs.

To the extent that the addition of Harrison and Lynam to the counterclaim is sought because they are joint tortfeasors with H & L, no joinder is required. "It is well settled that it is not required that all joint tortfeasors be joined together in an action against one, their liability being joint and several." (Citations and punctuation omitted.) *McCabe v. Lundell*, 199 Ga. App. 639, 641 (2) (405 SE2d 693) (1991). And joinder certainly would not be required to the extent that Chaney alleges separate, independent torts or breaches on the part of Harrison and Lynam. See *Searcy v. Searcy*, 280 Ga. 311, 313 (2) (627 SE2d 572) (2006) (joinder not necessary where claims involved distinct from those asserted against party to litigation). Although

> [i]t may be "desirable" that [Harrison and Lynam] be added as . . . defendant[s]-in-counterclaim[,] . . . OCGA § 9-11-13 (h) does not authorize the addition of a defendant-in-counterclaim merely because it may be "desirable." The statute mandates the addition of a defendant-in-counterclaim whose presence "is *required* for the granting of complete relief. . . ."

(Emphasis supplied.) *McCabe v. Lundell*, 199 Ga. App. at 641 (2). See also *Searcy v. Searcy*, 280 Ga. at 312-313 (2) (where no evidence of commingled funds, joinder not required). Compare *Gardner v. Gardner*, 276 Ga. at 190 (1) (approving joinder in divorce action of wholly-owned corporations with which husband may have commingled marital assets so as to facilitate resolution of marital claims); *Co-op Mtg. Investments Assoc. v. Pendley*, 134 Ga. App. 236, 239 (1) (214 SE2d 572) (1975) (joinder of general partner proper in counterclaim against limited partnership as general partner could become individually liable for all the debts of the partnership).[6] Accordingly, the trial court did not err in denying the motion for joinder.

---

[6] The trial court denied the motion on the ground that there was no evidence that Harrison and Lynam had commingled the corporate accounts.

*Judgment affirmed in part and reversed in part in Case No. A10A2190. Judgment reversed in Case No. A11A0195. Smith, P. J., and Mikell, J., concur.*

DECIDED MARCH 25, 2011.

*James C. Gaulden, Jr.,* for appellant.
*Lamar, Archer & Cofrin, Robert C. Lamar, Keith A. Pittman,* for appellees.