A11A0055. HINDU TEMPLE AND COMMUNITY CENTER OF THE HIGH DESERT, INC. et al. v. RAGHUNATHAN et al.
(714 SE2d 628)

DILLARD, Judge.

The trial court dismissed a lawsuit filed by appellants Hindu Temple and Community Center of the High Desert, Inc. ("Hindu Temple") and Annamalai Annamalai against appellees Sandhya J. Shastri, Senthil Kumar Kandasamy, and Valmikinathan P. Raghunathan, after concluding that both the lawsuit and accompanying verifications violated OCGA § 9-11-11.1, Georgia's anti-SLAPP ("Strategic Lawsuit Against Public Participation") statute.[1] In addition to dismissing the lawsuit, the trial court ordered that appellants

---

[1] The anti-SLAPP statute, OCGA § 9-11-11.1, imposes prerequisites to the filing of a

pay appellees' attorney fees and expenses pursuant to OCGA §§ 9-11-11.1 (b) and 9-15-14 (a), (b). Appellants argue that the trial court erred in ruling that the lawsuit was governed by OCGA § 9-11-11.1 and that their verifications were false, and further erred in calculating the amount of attorney fees owed. We disagree and affirm.

The undisputed evidence shows that in 2008, the Gwinnett County Police Department began receiving numerous complaints from individuals throughout the country against the Hindu Temple and Annamalai (the Temple's founder), alleging that they were victims of credit-card fraud. Specifically, the victims claimed that they contacted the Hindu Temple in order to purchase "religious services," only to later discover that their credit cards had been charged up to ten times more than the agreed-upon amount. There were also reports that Annamalai had been misrepresenting himself to these purchasers of religious services as a medical doctor.

During the ensuing investigation, the investigator assigned to manage the flood of complaints received statements from Shastri and Kandasamy. Specifically, Shastri reported that her grandmother contacted the Hindu Temple to purchase religious services by Annamalai, who claimed to be a doctor or psychologist, and that thereafter multiple unauthorized charges were run on her credit card.[2] Similarly, Kandasamy reported that he had also been a victim of credit-card fraud at the hands of the appellants, providing the investigator with a recorded conversation between himself and Annamalai, in which Annamalai held himself out to be a medical doctor.[3] It is unclear from the record whether Raghunathan also reported to having been victimized by appellants' alleged criminal conduct, but there is evidence that he referred Kandasamy to the investigator via e-mail after Kandasamy reported the alleged fraud to his bank and other governmental authorities.[4]

---

lawsuit that has been
> asserted against a person or entity arising from an act by that person or entity which could reasonably be construed as an act in furtherance of the right of free speech or the right to petition government for a redress of grievances under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern.

See *Atlanta Humane Soc'y v. Harkins*, 278 Ga. 451, 452-54 (1) (603 SE2d 289) (2004) (recognizing that OCGA § 9-11-11.1 embodies both a procedural and substantive component).

[2] The investigator testified that, like many of the reported victims, Shastri's grandmother feared spiritual repercussions for "rock[ing] the boat," and consequently decided to pay the unauthorized charges; thus, no criminal charges were filed against appellants in that particular case.

[3] The record does not reflect that criminal charges were ever filed as a direct result of Kandasamy's statements.

[4] The record shows that prior to the events in question, Annamalai filed a police report

Sometime thereafter, Hindu Temple and Annamalai filed the instant complaint against Shastri, Kandasamy, and Raghunathan, alleging malicious prosecution, intentional interference with contractual relations, and defamation, and seeking both compensatory and punitive damages. Appellants' claim for malicious prosecution was based not on direct conduct by appellees, but rather on appellees' "support[ ]" of "false statements" made by two other nonparty individuals (one from New Jersey and one from Illinois),[5] which resulted in Annamalai's arrest in an unrelated case.[6] Appellants' claim for intentional interference with contractual relations, lodged only against Kandasamy and Raghunathan, alleged that, by reporting unauthorized credit-card transactions, those appellees interfered with appellants' contractual relationships with their followers, from whom they enjoyed "substantial funds."[7] And finally, appellants' defamation claim, also lodged only against Kandasamy and Raghunathan, claimed that those appellees allegedly made "false and malicious comments" to the police about appellants' unauthorized credit-card transactions and/or encouraged others to do so as well, resulting in the cancellation of payments and appellants' "economic loss." Appellants have filed similar lawsuits in various courts throughout Georgia against other individuals who likewise reported appellants' alleged criminal conduct to law-enforcement officials.

Contemporaneously with the filing of the complaint, Annamalai (on behalf of both himself and the Hindu Temple), as well as appellants' counsel, Jesse W. Hill, filed sworn verifications pursuant to OCGA § 9-11-11.1 (b), in which they certified that (1) the claims were "true and correct to the best of [their] knowledge, information and belief formed after reasonable inquiry"; (2) the claims were well grounded in law and fact; (3) the acts forming the bases of the claims

---

claiming that Raghunathan made terroristic threats to him, but the resulting investigation revealed that Annamalai's claims were unsubstantiated and the investigator ultimately concluded that Annamalai provided false information to law enforcement.

[5] Indeed, Shastri resides in North Carolina, Kandasamy resides in Missouri, and Raghunathan resides in Georgia. The relationship between the appellees, if any, is unclear. With the exception of Raghunathan's e-mail introduction of Kandasamy and the investigator (which occurred after Kandasamy reported the alleged crime to other entities), the record is devoid of evidence that any of the appellees or the nonparty individuals knew of each other prior to voicing their respective grievances about appellants to the investigator.

[6] The criminal complaint in that case charged Annamalai with practicing medicine without a license, naming one of the nonparty individuals as the victim. Appellants contend that their claim against appellees is justified by the investigator's testimony that the arrest warrant for Annamalai was supported by both the statements of the nonparty victim, as well as witness statements (i.e., those from Shastri and Kandasamy), which provided additional evidence of the conduct alleged. The case was ultimately dismissed for reasons unknown.

[7] As noted supra, the record contains no evidence of a criminal report made by Raghunathan, so the allegations against him appear to be based upon his referring Kandasamy to the investigator.

were not privileged communications as defined by the statute; and (4) the claims were not interposed for any improper purpose, including to harass or to cause unnecessary delay.

Appellees moved to dismiss the complaint, asserting that the lawsuit violated Georgia's anti-SLAPP statute and that appellants' verifications were false. The trial court held a hearing on the motion pursuant to OCGA § 9-11-11.1 (d), during which it heard testimony from the investigator assigned to receive the complaints.[8] In addition to assimilating reports from individuals throughout the country complaining about having been victimized by appellants, the officer also learned of numerous individuals who had disputed the allegedly fraudulent charges with their credit-card companies directly but had chosen not to file police reports. The investigator testified that he had no reason to question the veracity of appellees or the other alleged victims' statements or motives, nor did he have any evidence remotely suggesting that any of them were conspiring to harm appellants. The trial court also learned that, in direct violation of a discovery stay in the case, appellants' counsel subjected the investigator, unrepresented by counsel, to a seven-hour videotaped deposition prior to the hearing.[9]

Clearly troubled by what it deemed appellants' "almost criminal behavior" of filing complaints against individuals voicing legitimate legal grievances, the trial court dismissed appellants' complaint. And in so doing, the trial court expressly credited the investigator's testimony that appellees' reports to the police were truthful, made in good faith, and were not malicious in nature, nor made pursuant to any type of conspiracy. The trial court also held that the lawsuit fell within the purview of OCGA § 9-11-11.1, and further concluded that appellants' verifications were false. The court based its ruling on a determination that appellants' claims were not well-grounded in fact or warranted by existing law at the time they were filed; that appellants' statements to law enforcement were privileged; and that neither appellants nor their attorney reasonably believed the claims were filed for a proper purpose.[10] Finally, the trial court ordered

---

[8] *See Metzler v. Rowell*, 248 Ga. App. 596, 600 (3) (547 SE2d 311) (2001) (trial court is authorized to receive evidence during an OCGA § 9-11-11.1 hearing without converting the motion to dismiss into one for summary judgment).

[9] *See* OCGA § 9-11-11.1 (d) ("All discovery and any pending hearings or motions in the action shall be stayed upon the filing of a motion to dismiss or a motion to strike made pursuant to [OCGA § 9-11-11.1 (b)]."). Appellants' counsel acknowledged his awareness of the discovery stay, and stated only that he had "no good response" for his conduct and admitted that "the bottom line [was] that [he] did not follow the court's direction." The trial court struck the deposition and ordered the videotape returned to the investigator.

[10] The trial court also dismissed the Hindu Temple's claims in their entirety after concluding that the entity "Hindu Temple and Community Center of the High Desert, Inc.,"

appellants and their counsel, jointly and severally, to pay appellees' attorney fees and expenses in the amount of $8,775, pursuant to OCGA §§ 9-11-11.1 (b) and 9-15-14 (a) and (b), after concluding that the complaint amounted to abusive litigation. This appeal follows.

The General Assembly adopted the anti-SLAPP statute "to encourage participation by the citizens of Georgia in matters of public significance through the exercise of their . . . right to petition government for redress of grievances."[11] The statute's stated purpose is to prevent a "chill[ing]" of that right "through abuse of the judicial process."[12] And to discourage such abuse, the anti-SLAPP statute requires that any claim that could reasonably be construed as infringing upon those rights must be accompanied by a detailed verification attesting that the claim

> is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; that the act forming the basis for the claim is not a privileged communication under paragraph (4) of Code Section 51-5-7; and that the claim is not interposed for any improper purpose such as to suppress a person's or entity's right of free speech or right to petition government, or to harass, or to cause unnecessary delay or needless increase in the cost of litigation.[13]

If a claim falls within the ambit of OCGA § 9-11-11.1 and the trial court makes a "substantive, evidentiary" determination that a verification is false, the statute demands the imposition of sanctions—up to and including dismissal of the complaint and an award of attorney fees.[14]

---

the named party in the lawsuit, did not even exist as a legal entity in the State of Georgia when the complaint and verifications were filed, and only came into existence nine days prior to the hearing on the motion to dismiss. *See generally* OCGA §§ 14-2-1502; 14-3-1502 (a) (corporations, whether for profit or nonprofit, not qualified to do business in the state are precluded from suing in Georgia courts). Appellants do not dispute the trial court's factual findings in this regard.

[11] OCGA § 9-11-11.1 (a).

[12] *Id.*

[13] OCGA § 9-11-11.1 (b). OCGA § 51-5-7 (4) deems privileged
[s]tatements made in good faith as part of an act in furtherance of the right of free speech or the right to petition government for a redress of grievances under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern, as defined in subsection (c) of Code Section 9-11-11.1[.]

[14] *Atlanta Humane Soc'y*, 278 Ga. at 454 (1), 456 (2) ("[T]he trial court may dismiss the claim if it makes a substantive, evidentiary determination that such claim is falsely verified."). *See* OCGA § 9-11-11.1 (b) ("If a claim is verified in violation of this Code section, the court, upon motion or upon its own initiative, shall impose upon the persons who signed the

With these guiding principles in mind, we now turn to appellants' enumerations of errors, which we will address in turn.

1. First, appellants argue that the trial court erred in ruling that their lawsuit constituted a SLAPP suit under OCGA § 9-11-11.1 because it was filed "months" after appellees' reports were given to the police[15] and, therefore, "cannot reasonably be construed as an effort" to intimidate appellees or suppress their speech. Appellants' argument is specious at best.

Each of appellants' claims are predicated solely and exclusively upon appellees' statements to police or statements made in furtherance of an ongoing investigation regarding appellants' alleged criminal activity. Suffice it to say, such speech is "in furtherance of the right . . . to petition government for a redress of grievances"[16] and thus represents the type of speech that the anti-SLAPP statute is designed to protect.[17] Moreover, it goes without saying that the perceived (and substantially documented) victimization of individuals throughout the country constitutes "an issue of public interest or concern."[18] Indeed, it is hard to imagine a more clear example of the type of "abuse of judicial process" that OCGA § 9-11-11.1 aims to deter than the serial filing of civil complaints against individuals lawfully reporting alleged unlawful activity.[19] We therefore have little

verification, a represented party, or both an appropriate sanction which may include dismissal of the claim and an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee."); *Hagemann v. Berkman Wynhaven Assocs., L.P.*, 290 Ga. App. 677, 683 (660 SE2d 449) (2008) ("A sanction against a claimant must be imposed upon a finding that the complaint and verification were filed in violation of OCGA § 9-11-11.1 (b).").

[15] The record reflects that appellees spoke with the investigator toward the end of 2008, and appellants filed the complaint in January 2010.

[16] OCGA § 9-11-11.1 (b).

[17] *See id*. The definition of protected speech, as set forth in OCGA § 9-11-11.1 (c), is exceptionally broad and, by its plain terms, encompasses "any written or oral statement . . . made . . . to a[n] . . . executive . . . proceeding, or any other official proceeding authorized by law, . . . or . . . made in connection with an issue under consideration or review by a[n] . . . executive . . . body, or any other official proceeding authorized by law." *See Metzler*, 248 Ga. App. at 598 (1) (noting that the definition of protected speech encompassed by OCGA § 9-11-11.1 (c) is "very expansive"); *see also Lovett v. Capital Principles, LLC*, 300 Ga. App. 799, 801.(686 SE2d 411) (2009) (recommendations made by advisors to school board regarding the implementation of a computer program within the school district were made during "an official proceeding authorized by law," and thus, a complaint based upon the advisors' statements fell within OCGA § 9-11-11.1). *Compare Berryhill v. Ga. Cmty. Support & Solutions, Inc.*, 281 Ga. 439, 440-42 (638 SE2d 278) (2006) (defendant's statements in internet postings and e-mails complaining about the care her mentally handicapped son was receiving were not made pursuant to an official proceeding, nor could they be construed as a request for an official investigation or proceeding, and were therefore not entitled to anti-SLAPP protection).

[18] OCGA § 9-11-11.1 (b); *see also generally Adventure Outdoors, Inc. v. Bloomberg*, 307 Ga. App. 356, 360 (2) (705 SE2d 241) (2010) (extending OCGA § 9-11-11.1 protection to speech designed to inform the public about gun dealers alleged to be violating federal laws).

[19] *See* OCGA § 9-11-11.1 (a). *Cf. Citizens for Ethics in Gov't, LLC v. Atlanta Dev. Auth.*,

trouble concluding that appellants' complaint falls within the ambit of OCGA § 9-11-11.1, which imposes on them the procedural requirement of filing sworn verifications; and, contrary to appellants' assertion, the passage of "months" between appellees' reports to the police and appellants' filing of the lawsuit does nothing to change that result.[20] We further note that appellants' argument that the anti-SLAPP statute is inapplicable in the case sub judice seems particularly disingenuous in light of the fact that, having filed sworn affidavits pursuant to OCGA § 9-11-11.1 (b), they were obviously under the impression that the statute did in fact govern their claims.[21]

2. Appellants also challenge the trial court's finding that their affidavits were false. Again, we disagree.

Although we could affirm the trial court on any number of grounds, we need not go beyond our conclusion that there is ample evidence in the record demonstrating that appellants' lawsuit was not filed for a proper purpose or well-grounded in fact. Here, each of appellants' claims—malicious prosecution,[22] tortious interference with business relations,[23] and defamation[24]—requires a showing of intentional, unlawful conduct by appellees. Importantly, appellants have not contested the veracity of appellees' statements concerning

---

303 Ga. App. 724 (694 SE2d 680) (2010) (illustrating a clear abuse of the judicial process).

[20] *See generally Atlanta Humane Soc'y*, 278 Ga. at 454 (1) (holding that OCGA § 9-11-11.1 offers substantive protection beyond the procedural consideration related to the timing of the filing of the verification); *see also Lovett,* 300 Ga. App. at 801; *Metzler*, 248 Ga. App. at 598 (1).

[21] We further reject appellants' contention that *Denton v. Browns Mill Dev. Co., Inc.*, 275 Ga. 2 (561 SE2d 431) (2002), stands for the proposition that any lawsuit alleging intentional conduct by a defendant falls outside the purview of OCGA § 9-11-11.1. Rather, *Denton* merely holds that the defendant's alleged unlawful trespass onto the plaintiff's land under the facts of that particular case did not constitute "an act in furtherance of the right of free speech or the right to petition government" and, therefore, fell outside the stated purpose of the statute. *Id.* at 6 (punctuation omitted).

[22] A claim of malicious prosecution requires the appellants to show that they were "subject to a criminal prosecution which was carried on maliciously and without any probable cause and which caused [them] damage, and that the prosecution was instigated by the [appellees]." *Turnage v. Kasper*, 307 Ga. App. 172, 179-80 (1) (b) (704 SE2d 842) (2010) (punctuation and footnote omitted); *see* OCGA § 51-7-40.

[23] A claim of tortious interference with business relations requires proof that appellees engaged in nonprivileged, improper action or wrongful conduct; that they acted purposely and with malice with the intent to injure appellants; that their actions induced or caused a party to breach a contractual obligation or to discontinue or fail to enter into an anticipated business relationship with appellants; and that their tortious conduct proximately caused damage to appellants. *See, e.g., Chaney v. Harrison & Lynam, LLC*, 308 Ga. App. 808, 818 (2) (708 SE2d 672) (2011).

[24] A claim of defamation requires proof of "(1) a false and defamatory statement concerning [appellants]; (2) an unprivileged communication to a third party; (3) fault by [appellees] amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm." *Bollea v. World Championship Wrestling, Inc.*, 271 Ga. App. 555, 557 (1) (610 SE2d 92) (2005) (punctuation omitted); *see* OCGA §§ 51-5-4 (a); 51-5-6.

their alleged criminal conduct, much less presented evidence sufficient to imply wrongdoing or malicious conduct by the appellees. At most, appellants showed that Raghunathan asked Kandasamy to report to the appropriate law-enforcement official the same conduct he had already reported to his bank and other governmental entities, which appellants argue was inconsistent with Kandasamy's later statement that, "[n]o party ever encouraged [him] to contact the Gwinnett County Police or to suggest that [he] say anything that was not true."[25] But that evidence falls woefully short of the prima facie evidence required to support the claims asserted in the complaint.[26] Moreover, appellants concede that they have filed similar lawsuits in various courts throughout Georgia against numerous individuals from across the country—all of whom claim to have been victimized by appellants' alleged criminal activity.[27] And, with regard to the seven-hour deposition of the investigator, the evidence shows that appellants have blatantly abused the judicial process within the context of this case.

For all of the foregoing reasons, we agree with the trial court that appellants' verifications were false to the extent that the complaint was neither filed for a proper purpose nor well-grounded in fact, and that dismissal of the complaint was more than warranted.[28]

3. Finally, appellants argue that the trial court erred in calculating the amount of its attorney-fee assessment. During a separate hearing on the issue of attorney fees, the trial court received evidence related to appellees' counsel's experience, his hourly billing rate and the reasonableness of that rate, the rate structure with his clients, and the nature and amount of time expended on this

---

[25] This statement was included in a sworn affidavit filed by Kandasamy, and appellants argue that it is inconsistent with an e-mail in which Raghunathan identifies the assigned investigator and requests that Kandasamy "[p]lease call [the investigator] with information about the fraudulent transactions."

[26] *See generally* OCGA §§ 51-5-4 (a); 51-5-6; 51-7-40; *Chaney,* 308 Ga. App. at 818 (2); *Turnage,* 307 Ga. App. at 179-80 (1) (b); *Bollea,* 271 Ga. App. at 557 (1). *Cf. Quiktrip Corp. v. Fesenko,* 228 Ga. App. 287, 288 (1) (491 SE2d 504) (1997) ("It is fundamental that once defendant affirmatively negates an essential element of plaintiff's complaint, the burden shifts to the plaintiff to show specific evidence of a genuine issue for trial." (citation omitted)).

[27] Indeed, appellants filed a separate lawsuit in federal court, naming the investigator as a defendant, in which they alleged that he violated the Racketeer Influenced and Corrupt Organizations Act (RICO) and conspired with appellees, among others, to cause appellants harm. The lawsuit was ultimately dismissed, but not before the officer was subject to an internal investigation pursuant to which appellants' allegations were deemed utterly baseless.

[28] *See, e.g.,* OCGA § 9-11-11.1 (b); *Hagemann v. City of Marietta,* 287 Ga. App. 1, 6-8 (1) (650 SE2d 363) (2007) (affirming trial court's striking of defendant's counterclaims after concluding that the verifications filed therewith were false because the counterclaims were not well-grounded in law); *Metzler,* 248 Ga. App. at 597-99 (1) (dismissing plaintiff's complaint filed in violation of OCGA § 9-11-11.1).

matter.[29] The trial court then concluded that, inter alia, appellants asserted claims "with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept,"[30] or, alternatively, claims that "lacked substantial justification" and "were substantially frivolous, substantially groundless, or substantially vexatious,"[31] such that an award of attorney fees was justified under either OCGA § 9-15-14 (a) or (b).[32] And consistent with the evidence presented, the trial court ordered appellants and their attorney, jointly and severally, to pay $8,775, which it determined "constitute[d] the amount of reasonable attorney[ ] fees incurred in defending this lawsuit."[33]

Without challenging the sufficiency of the evidence as to the attorney fees/costs or the reasonableness of same, appellants argue that the trial court's award was unwarranted because appellees' counsel testified on cross-examination that he agreed to defend his clients for a flat fee of $2,000 each, totaling $4,000. Appellees' trial counsel testified that, although he agreed to accept a lesser fee from his clients, his testimony represented the *actual* billable hours he incurred in defending the lawsuit.

The question, then, is whether, under OCGA § 9-15-14, the trial court was authorized to assess an award representing the reasonable value of the attorney's services rendered, or whether it was instead limited strictly to the amount that the attorney actually billed to his clients.

By its express terms, OCGA § 9-15-14 authorizes an award of "reasonable and necessary attorney's fees and expenses of litigation"[34] to any party who has been forced to defend a complaint lacking either a justiciable issue or a substantial justification, limiting the recovery only so as to "not exceed amounts which are reasonable and necessary for defending or asserting the rights of a party."[35] Our case law further requires that the award be supported by "sufficient proof of the actual costs and the reasonableness of

---

[29] Appellees' counsel represented Shastri and Kandasamy exclusively; Raghunathan defended the lawsuit *pro se.*

[30] OCGA § 9-15-14 (a).

[31] OCGA § 9-15-14 (b).

[32] As previously mentioned, the trial court also assessed attorney fees under OCGA § 9-11-11.1 (b); however, because we affirm the award under OCGA § 9-15-14, we need not address this alternative ground.

[33] OCGA § 9-15-14 (a) expressly authorizes the trial court to assess an attorney-fees award against the party asserting the offending claim, that party's attorney, or both.

[34] OCGA § 9-15-14 (a), (b).

[35] OCGA § 9-15-14 (d).

those costs,"[36] but does not otherwise define "actual costs." And notably, nothing in either the statute or our case law strictly limits the award to expenses actually billed to or incurred by a client.[37]

In the absence of an explicit textual limitation of such an award, or decisional case law to the contrary, we see no basis for narrowing the scope of a permissible attorney-fee award assessed pursuant to OCGA § 9-15-14 (a) or (b) in the manner urged by appellants. The purpose of these statutory subsections is twofold: to both punish and deter litigation abuses and to recompense litigants who are forced to expend resources in contending with abusive litigation.[38] In light of this dual purpose, we conclude that to the extent one party may receive the benefit of an attorney's willingness to accept the risk of defending his or her client for an amount less than the actual value of the services ultimately rendered, the most faithful construction of OCGA § 9-15-14 is one that does not reward the offending party.[39] This is particularly true in light of the fact that, as a necessary predicate to having issued the award, the trial court must determine

---

[36] *Dave Lucas Co. v. Lewis*, 293 Ga. App. 288, 293 (5) (666 SE2d 576) (2008) (footnote omitted); *see, e.g., Murray v. DeKalb Farmers Mkt., Inc.*, 305 Ga. App. 523, 525 (2) (699 SE2d 842) (2010) (affirming only that portion of fee award that was supported by evidence in the record); *Johnston v. Correale*, 285 Ga. App. 870, 870-71 (1) (648 SE2d 180) (2007) (remanding case to the trial court for entry of findings of fact, including actual costs and reasonableness of attorney fees).

[37] *Compare* OCGA §§ 9-11-11.1 (b) ("If a claim is verified in violation of this Code section, the court, upon motion or upon its own initiative, shall impose upon the persons who signed the verification, a represented party, or both an appropriate sanction which may include . . . the amount of the reasonable expenses *incurred* because of the filing of the pleading, including a reasonable attorney's fee." (emphasis supplied)); 9-15-14 (d) ("Attorney's fees and expenses of litigation *incurred* in obtaining an order of court pursuant to this Code section may also be assessed by the court and included in its order." (emphasis supplied)); *Roylston v. Bank of Am., N.A.*, 290 Ga. App. 556, 562-63 (2) (a) (660 SE2d 412) (2008) (in actions involving both meritorious and frivolous claims, trial court must limit award to fees incurred as a result of the sanctionable conduct so as to "exclude from any sanctions award those fees and expenses unrelated to defending against the claims deemed frivolous"). *Cf. Wisconsin v. Hotline Indus., Inc.*, 236 F3d 363, 366-68 (II) (7th Cir. 2000) (discussing various attorney-fee statutes under federal law and recognizing a distinction between those authorizing an award of "reasonable fees" and those authorizing an award of fees "actually incurred"); *State Farm Mut. Auto. Ins. Co. v. Smoot*, 381 F2d 331, 339 (4) (5th Cir. 1967) (prior to the adoption of OCGA § 9-15-14, affirming a jury charge stating that under Georgia law "any award of attorney fees . . . should be determined on a quantum meruit basis, irrespective of any contract which may exist between the plaintiff and his attorney as to the amount of such fees. . . .").

[38] *See O'Keefe v. O'Keefe*, 285 Ga. 805, 806 (684 SE2d 266) (2009); *In re Estate of Holtzclaw*, 293 Ga. App. 577, 579 (1) (667 SE2d 432) (2008); *see also Dixon v. Home Indem. Co.*, 206 Ga. App. 623, 624 (1) (426 SE2d 381) (1992) ("Though an award arising from a judgment under OCGA § 9-15-14 also serves the incidental purpose of providing compensation to the injured party, this does not diminish the reality that awards made under it are 'sanctions' under the accepted definition of that term.").

[39] We note that "any award of fees or expenses under OCGA § 9-15-14 (a) 'shall be awarded to any party' and not directly to the attorney for the party[,]" but the court nonetheless may "specify the amounts due to each attorney or law firm." *Brewer v. Paulk*, 296 Ga. App. 26, 31 (2) (673 SE2d 545) (2009) (citation and emphasis omitted).

that the fees were unwarranted and amassed solely as a result of abusive conduct by the party against whom they were assessed. For these reasons, we conclude that the trial court did not abuse its discretion in awarding to appellees the reasonable value of their attorney's services.[40]

*Judgment affirmed. Phipps, P. J., and Andrews, J., concur.*

DECIDED JUNE 30, 2011 —
RECONSIDERATION DISMISSED JULY 22, 2011 — 

*Jesse W. Hill*, for appellants.
*Mark E. Scott*, for appellees.

---

[40] *See generally Roylston,* 290 Ga. App. at 564 (2) (b) ("Because [appellant] failed to present any justiciable issue of law or fact and brought claims that lacked substantial justification against [appellee], the trial court did not abuse its discretion in its attorney fees award."); *Bircoll v. Rosenthal,* 267 Ga. App. 431, 439 (2) (c) (600 SE2d 388) (2004) (rejecting appellant's argument that attorney fees sanction should be limited to legal work performed after deposition in which it was revealed the claims were groundless because appellants "should have known that their claims had no substantial basis before they filed the complaint"); *see also Abt v. Abt,* 289 Ga. 166 (709 SE2d 806) (2011); *Miner v. Harrison,* 205 Ga. App. 523, 527 (5) (422 SE2d 899) (1992).