**WHOLE COURT**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 16, 2017**

# In the Court of Appeals of Georgia

A16A1858. COHEN v. ROGERS.

MERCIER, Judge.

Joseph Rogers, Jr. sued his former employee, Mye Brindle in the Superior Court of Cobb County, seeking injunctive relief regarding video and other photographic depictions Brindle allegedly obtained of him without his consent, and asserting claims for invasion of privacy, intentional infliction of emotional distress, and unjust enrichment. In a separate suit, Brindle sued Rogers in the State Court of Fulton County, asserting claims of battery, intentional infliction of emotional distress, and Georgia RICO violations. After Brindle voluntarily dismissed the Fulton County case, the Fulton County court granted Rogers's motion for attorney fees and litigation expenses pursuant to OCGA § 9-15-14 (b), ordering Brindle and her attorney, David Cohen, to pay $142,656.82 in attorney fees and litigation expenses. Brindle and Cohen filed separate appeals from that ruling. In those appeals, which we consolidated, this Court vacated the fee award and remanded the case for the trial court to determine what award, if any, should be assessed for conduct undertaken in that court. *Cohen*

*v. Rogers*, Case No. A14A0201 (decided July 16, 2014) (unpublished) ("*Cohen I*").

On remand, after conducting additional evidentiary hearings, the trial court found that Rogers was entitled to recover attorney fees and litigation expenses as a result of Cohen's conduct in that court, and entered an award of $198,383.52 against Cohen; the court found the evidence insufficient to warrant an award against Brindle.

In this appeal, Cohen asserts two enumerations of error, namely, that the trial court erred by: (1) "declining to reconsider whether sanctionable conduct occurred," and (2) entering the order granting the fees and expenses, because the conduct before that court was not sanctionable, the court failed to specify which fees were attributable to which conduct and made an improper lump sum award, and Rogers failed to submit adequate proof to support the award. For the reasons that follow, we affirm.

OCGA § 9-15-14 (b) pertinently provides:

> The court may assess reasonable and necessary attorney's fees and expenses of litigation in any civil action . . . if, upon the motion of any party or the court itself, it finds that an attorney or party brought or defended an action, or any part thereof, that lacked substantial justification or that the action, or any part thereof, was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct.

1. Cohen contends that the trial court erred after remand by "declining to reconsider whether sanctionable conduct occurred." This contention is without merit.

In *Cohen I*, this Court vacated the award of fees and expenses under OCGA § 9-15-14 (b), determined that the trial court erred in awarding fees related to appellate and pre-litigation conduct, and remanded the case with direction to the Fulton County court. Opinion, p. 4. We directed the trial court "to make express findings of facts and conclusions of law as to the basis for an award of reasonable and necessary attorney fees and expenses of litigation for conduct undertaken before that court, pursuant to OCGA § 9-15-14, specifying the amount of such award, if any." Opinion, pp. 4-5.

After remand, Rogers filed a renewed motion for attorney fees. The fee request included the amount of fees previously awarded, subtracted fees for work done before the Fulton County suit was filed, subtracted fees for work related to specified appellate proceedings, and added fees for post-remittitur work on Rogers's renewed attorney fee motion. Cohen argues on appeal that the trial court erred by declining to revisit the issue of liability for a fee award, contending that this Court directed the trial court to first consider whether any sanctionable conduct occurred before that court and, if so, only then should it consider the amount of the award.

We agree with Cohen that the trial court was required to determine upon remand whether conduct before that court authorized an award of fees. In *Cohen I*, this Court did not affirm the determination of liability in the trial court's first fee award; rather, it vacated that award in its entirety and remanded for the trial court "to determine what award, *if any,* should be assessed under OCGA § 9-15-14 (b) for conduct undertaken in that court." Id. at p. 2 (emphasis supplied). We did not address the issue of whether conduct before the trial court was sanctionable because we vacated the entire award and remanded the case for the trial court to make those findings anew.

Regardless of the trial court's stated interpretation at the evidentiary hearing of this Court's opinion in *Cohen I*, its written order indicates that it did in fact reconsider the issue of liability. In contrast to the vacated order, the trial court on remand found that Brindle had done nothing to justify the entry of a fee award against her personally, and then found Cohen liable for certain fees and expenses. Thus, this contention presents no basis for reversal.

2. Cohen contends that the trial court erred by granting Rogers's renewed motion for attorney fees and litigation expenses because the trial court awarded fees for "proper litigation conduct," "fail[ed] to specify the sanctionable conduct and fees

4

attributable to each sanctionable act, ma[de] an improper 'lump sum' award, and rel[ied] on inadequate evidence." We disagree.

We utilize an abuse of discretion standard of review when examining an award of attorney fees made pursuant to OCGA § 9-15-14 (b). See *Mitcham v. Blalock*, 268 Ga. 644, 647 (5) (491 SE2d 782) (1997) (overruled on other grounds); *Haggard v. Bd. of Regents of Univ. System of Georgia*, 257 Ga. 524, 526 (4) (c) (360 SE2d 566) (1987). Under an abuse of discretion standard of review, we are to "review the trial court's legal holdings de novo, and we uphold the trial court's factual findings as long as they are not clearly erroneous, which means there is some evidence in the record to support them." *Lawrence v. Lawrence*, 286 Ga. 309, 310 (1) (687 SE2d 421) (2009).

(a) *Did the trial court abuse its discretion in finding sanctionable conduct?*

The trial court's order spans 22 pages and includes more than 40 findings of facts. Rogers sought attorney fees and expenses for the costs incurred in defending Cohen's continuation of a duplicative lawsuit in Fulton County, when a suit was already pending in Cobb County. The trial court was tasked with determining whether, among other things, the filing of the Fulton County suit was undertaken for the purpose of circumventing the order of a court in another jurisdiction, thereby causing

greater inconvenience, harassment, and embarrassment to Rogers and unnecessarily expanding the proceedings.

Notwithstanding the exceptionally detailed order of the trial court setting out its findings of fact and conclusions of law regarding the conduct that gave rise to the award of fees and expenses, Cohen reduces the forty-plus findings of fact down to three distinct instances of conduct it alleges formed the basis for the trial court's award of fees and expenses. Specifically, he asserts that the filing of the complaint, opposing the sealing of the record, and delaying the voluntary dismissal of the Fulton County complaint did not constitute sanctionable conduct. Cohen refers to a few of the facts surrounding each of those instances and points out why, in his opinion, the facts do not support the award. But this approach ignores the extensive factual findings of the trial court and the applicable standard of review.

A thorough examination of all of the trial court's findings of facts, rather than an isolated review of only a few of those facts, reveals a different situation from the one Cohen describes. A comprehensive review of the findings includes the following. In July 2012, Rogers received a letter from Cohen that, among other things, advised that the matter was "best resolved early [and] outside of public litigation," and suggested that protracted litigation could result in, among other things, media attention,

6

criminal charges, lengthy incarceration, divorce, and the destruction of families; On September 14, 2012, Rogers filed an action in Cobb County along with a motion to seal the record, and the complaint and motion to seal were served on Cohen, who was counsel for Brindle, on September 17, 2012. On the same day that Cohen received Rogers's complaint and motion to seal, Cohen represented Brindle in a hearing on the motion to seal in Cobb County.

On September 19, 2012, Cohen filed an action in Fulton County on Brindle's behalf. In the verified complaint, Brindle asserted that she had in her possession the very information that Rogers sought to have filed under seal in Cobb County. After the conclusion of a hearing in the Cobb County action, the parties informed the trial judge that they believed they could reach a consent agreement on sealing the record. However, in the early morning hours of September 28, 2012, before the terms of the consent order were finalized, Cohen and Brindle went to the City of Atlanta Police Department, where Brindle reported that Rogers had committed certain sexual offenses against her. The Atlanta Police Department generated an incident report based on Brindle's statements. Cohen did not notify counsel for Rogers that a police report had been generated and, later that day (September 28), the parties finalized a consent

7

agreement sealing the record in Cobb County. The consent order was entered the same day.

In early October 2012, the parties tried to reach a consent agreement to seal the record in the Fulton County action. However, when those negotiations failed, Rogers filed an emergency motion to place the Fulton County case under seal. On October 8, 2012, the Fulton County court entered an order temporarily sealing the record. On October 9, 2012, counsel for Brindle filed a brief opposing Rogers's motion to seal the record. One of Brindle's arguments in the brief was that the motion to seal was moot because Brindle had reported her accusations to the Atlanta Police Department. This was the first time counsel for Rogers, or the trial court, was made aware that Brindle had disclosed her allegations to police or that an incident report existed.

After making these extensive findings of fact (and others), all supported by the record, the trial court reached a conclusion. "The only discernible purposes of the filing of [the Fulton County] suit and opposing sealing the record w[ere] to delay the sealing and cause greater inconvenience, harassment and embarrassment to Defendant Rogers, and such conduct greatly and unnecessarily expanded the proceedings." A review of the record reveals ample evidence to support the trial court's findings, such

that the trial court did not abuse its discretion in finding an award warranted pursuant to OCGA § 9-15-14 (b).

Although Cohen addresses the cited conduct as separate and distinct acts, this approach distorts the findings of the trial court. The trial court did not consider each act in isolation, but instead considered them together, finding, for example, that the purpose of Cohen's conduct with respect to both the "filing of this suit *and* opposing sealing the record was to . . . cause greater inconvenience, harassment and embarrassment to Defendant Rogers, and such conduct greatly and unnecessarily expanded the proceedings." (Emphasis supplied.) Notably, whether Cohen made plausible arguments to the trial court as to why the record should not be sealed in Fulton County is irrelevant to our consideration under an abuse of discretion standard. Pursuant to that standard, we are charged with examining the record to see if the factual findings of the trial court are supported by some evidence and whether the court abused its discretion in awarding fees. See *Lawrence*, supra. A review of the record supports the trial court's finding that the filing of the duplicative Fulton County suit and Cohen's opposition to sealing the record in the Fulton County case, considered together, amounted to conduct designed to harass Rogers and to unnecessarily expand the proceedings.

9

Cohen further contends that the delay in voluntarily dismissing the Fulton County case was not sanctionable conduct. The trial court referenced the delay in connection with its finding that the Fulton County action was brought for an impermissible purpose. For Cohen to tease this finding out as separate and distinct conduct again mischaracterizes the trial court's findings. The record sufficiently supports the trial court's findings, and there was no abuse of discretion.

It is important to note that the trial court found that had Rogers not been successful in his renewed motion for fees, he would not have been entitled to fees for the work he spent in pursuing the motion. As the trial court noted, OCGA § 9-15-14 (d) states clearly that "[a]ttorney's fees and expenses of litigation incurred in obtaining an order of court pursuant to this Code section may also be assessed by the court and included in its order." The trial court then found that because it was granting the renewed fee motion, Rogers had in fact obtained an order of the court pursuant to OCGA § 9-15-14, and was thus entitled to an award of attorney fees and expenses of litigation incurred in obtaining said order. OCGA § 9-15-14 (d). Because the trial court did not abuse its discretion in granting Rogers's renewed fee motion, it was not an abuse of discretion for the trial court to award fees in pursuing the motion.

A correct application of the abuse of discretion standard of review reveals that there is evidence in the record to support the trial court's factual findings. See *Lawrence*, supra. It is not the role of this Court to ignore or reform the findings of fact made by the trial court. A proper application of the abuse of discretion standard demands that we affirm the holdings of the trial court if there is some evidence in the record to support them, regardless of whether judges on this Court would have made those same findings. In other words, we may not substitute our judgment or opinion for those of the fact finder if there was sufficient evidence to support them. There being evidence to support the trial court's findings of fact and, as de novo review of the trial court's legal holdings reveals no error, the judgment of the trial court must be affirmed.

(b) *Was the trial court's order sufficiently specific and supported by adequate proof?*

As set out above, OCGA § 9-15-14 (b) authorizes the court to "assess reasonable and necessary attorney's fees and expenses of litigation . . . if . . . it finds that an attorney or party brought or defended an action, or any part thereof, that . . . was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct." "Attorney's fees

11

and expenses of litigation awarded under [OCGA § 9-15-14] shall not exceed amounts which are reasonable and necessary for defending or asserting the rights of a party." OCGA § 9-15-14 (d). The award must be supported by "sufficient proof of the actual costs and the reasonableness of those costs." *Hindu Temple & Cmty. Ctr. &c. v. Raghunathan*, 311 Ga. App. 109, 117-118 (3) (714 SE2d 628) (2011). "[W]hen a trial court decides in its discretion to award such attorney fees and costs, "it is incumbent upon the court to specify the conduct upon which the award is made." *Hall v. Monroe County,* 271 Ga. App. 895, 897 (2) (611 SE2d 120) (2005) (punctuation omitted). To permit meaningful appellate review of an award of fees and expenses, the trial court's order cannot be "too vague and conclusory," such as where it fails to cite examples of conduct that authorize the award. *La Petite Academy, Inc. v. Prescott*, 234 Ga. App. 32, 34 (2) (506 SE2d 183) (1998). The trial court need not cite "specific testimony, argument of counsel, or any other specific factual reference" in its order awarding fees under OCGA § 9-15-14; it is only required to specify the conduct upon which the award is made. *Century Center at Braselton, LLC v. Town of Braselton,* 285 Ga. 380, 381 (1) (677 SE2d 106) (2009).

In the 22-page order at issue in this appeal, the trial court specified the conduct upon which the award was made, and cited sufficient proof of the fees and expenses

and their reasonableness. The order pertinently included the following findings: additional hearings were held regarding attorney fees; Rogers's counsel testified as to the amount and reasonableness of the fees incurred by Rogers and to the conduct of Cohen in the action that caused those fees; Rogers's counsel was cross-examined for several hours; Rogers's counsel testified about the specific dollar amounts of fees initially awarded, the specific dollar amounts attributable to work disapproved of in *Cohen I*, and the resulting dollar amount of fees sought; Rogers's counsel's affidavits included dollar amounts incurred on specified dates; Rogers's counsel established his personal knowledge of the fee entries and the legal work done on Rogers's behalf; and evidence showed the amounts of the fees incurred since the return of the remittitur, the hourly rates the attorneys charged Rogers, and how those rates compared to the customary rates for similar cases in the applicable market. In the order, the court: listed the specific nature of the legal activities engaged in by Rogers's counsel, including the types of activities and the proceedings for which they were performed; included several pages of fees that were not allowed, listing the attorney's names, the dates the fees were incurred, and the amounts billed; and included its calculations, showing how it arrived at the total award of $198,383.52.

In its conclusions of law, the trial court correctly stated that it was required to limit the fee award to those fees incurred because of sanctionable conduct. See *Franklin Credit Mgmt. Corp. v. Friedenberg*, 275 Ga. App. 236, 242 (620 SE2d 463) (2005). It also explained why Cohen, and not Brindle, was responsible for the fees and expenses. The court concluded that, except for fees sought in three categories (to wit, fees for time spent on the unsuccessful motion for contempt, fees for services not explained in sufficient detail, and fees and expenses that appeared to be related to the Cobb County case or related to non-legal tasks), the fees and expenses Rogers sought "were reasonable and necessarily related to the Fulton Action and resulted from either the conduct of Cohen in bringing this action and then unnecessarily prolonging the proceedings, or were incurred pursuing an attorney fee award pursuant OCGA § 9-15-14." See OCGA § 9-15-14 (d) (the trial court has discretion to award fees incurred in pursuing a fee award).

> The purpose of th[is] statutory subsection[] is twofold: to both punish and deter litigation abuses and to recompense litigants who are forced to expend resources in contending with abusive litigation. In light of this dual purpose, we conclude that to the extent one party may receive the benefit of an attorney's willingness to accept the risk of defending his or her client for an amount less than the actual value of the services ultimately rendered, the most faithful construction of OCGA § 9-15-14

14

is one that does not reward the offending party. This is particularly true in light of the fact that, as a necessary predicate to having issued the award, the trial court must determine that the fees were unwarranted and amassed solely as a result of abusive conduct by the party against whom they were assessed.

*Hindu Temple & Cmty. Ctr. &c.*, supra at 118-119.

We are not persuaded by Cohen's contention that the court's findings are not sufficiently specific to support an award. To the contrary, the court's detailed order does in fact "permit meaningful appellate review of the award of attorney fees and expenses." *Ga. Dept. of Transp. v. Douglas Asphalt Co.*, 295 Ga. App. 421, 424 (1) (672 SE2d 899) (2009); see *La Petite Academy, Inc.* supra. We agree with the statement of the Supreme Court in *Fox v. Vice*, 563 U. S. 826 (131 S. Ct. 2205, 180 LE2d 45) (2011) (which involved attorney fee awards in civil rights cases - awards that are reviewed on appeal for abuse of discretion): the goal in shifting attorney fees "is to do rough justice, not to achieve auditing perfection." Id. at 838 (II).

The trial court did not abuse its discretion in awarding to Rogers the reasonable value of his attorneys' services and litigation expenses. See *Hindu Temple & Cmty. Ctr. &c.*, supra; see generally *Haggard v. Board of Regents,* 257 Ga. 524, 527 (4) (c) (360 SE2d 566) (1987).

*Judgment affirmed. Miller, P. J., Ellington, P. J., Branch, McMillian, Reese and Self, JJ., Concur. Barnes, P. J., and McFadden, P. J., concur in part and dissent in part.*

A16A1858. COHEN v. ROGERS.

BARNES, Presiding Judge, concurring in part and dissenting in part.

Because the trial court abused its discretion by disregarding the express direction of this Court, I must respectfully dissent to Division 2 of the majority opinion affirming the trial court's award of almost $200,000 in attorney fees to Rogers.[1] The trial court abused its discretion in finding that the actions of Cohen were sanctionable, and to the extent there was any sanctionable conduct, erred in the amount of fees awarded.

The Fulton County action was active for 21 days. In our previous opinion vacating the first award of $142,656 in attorney fees and expenses of litigation under OCGA § 9-15-14 (b), we found that the trial court erred in awarding fees related to appellate and prelitigation conduct. We directed the trial court to "make express findings of fact and conclusions of law as to the basis for an award . . . *for conduct undertaken before that court*, pursuant to OCGA § 9-15-14 . . . ." *Brindle v. Rogers*, 328 Ga. App. XXIV (Case No. A14A0676) (2014). But instead of focusing on the conduct before it that justified a fee award, as directed, the trial court essentially entered the same order but raised the award to $198,382. Even under the deferential

---

[1]I concur fully in Division 1.

abuse of discretion standard of review, an attorney fee award of almost $10,000 for each of the 21 days the case was pending abuses that discretion. The findings and conclusions in the award on appeal are "too vague and conclusory to permit any meaningful appellate review of the award," and instead of affirming, this Court should reverse. See *Georgia Dept. of Transp. v. Douglas Asphalt Co.*, 295 Ga. App. 421, 424 (1) (672 SE2d 899) (2009) (citation and punctuation omitted).

In response to this Court's directive to make express findings of fact and conclusions of law about conduct before that court that served as the basis for an award of fees, if any, the trial court singled out one of Brindle's three attorneys, Cohen, and concluded that he filed the Fulton County suit "for delay and harassment and unnecessarily expanded the proceedings," which echoes the standards in OCGA § 9-15-14 (b). It concluded that "[t]he only discernable purposes of the filing of this suit and opposing sealing the record was to delay the sealing and cause greater inconvenience, harassment and embarrassment to Defendant Rogers, and such conduct greatly and unnecessarily expanded the proceedings."

The conclusion that the *only* discernable purpose for filing the Fulton suit was to delay the sealing, inconvenience and embarrass Rogers, and unnecessarily expand the proceeding is contradicted by the evidence in the record, for the reasons described

2

infra. As to Brindle's refusal to consent to sealing the Fulton County record, neither the trial court nor the majority has acknowledged that parties cannot simply agree to seal the court record from public view, as also discussed infra.

By affirming this fee award, this Court abdicates its responsibility to look at the entire record to determine whether the trial court abused its discretion. The trial court erred in granting the motion, and erred in the amount of the award. A summary of that review follows.

In 2012, Mye Brindle, through her attorneys David Cohen and John Butters, brought sexual harassment claims against Joseph Rogers, Jr. While the opposing parties were attending a confidential mediation of these claims, Rogers' attorneys filed a John Doe lawsuit in Cobb County alleging extortion. Before Brindle was served with the Cobb County lawsuit, Brindle filed suit against Rogers in Fulton County for her sexual harassment claims. Twenty-one days after filing, Brindle dismissed her Fulton County suit.

Rogers moved for attorney fees in Fulton County, and the Fulton County trial court initially awarded Rogers $142,656 in attorney fees and expenses of litigation under OCGA § 9-15-14 (b) against Brindle and one of her three attorneys, David Cohen. This Court granted Brindle and Cohen's applications for discretionary appeal,

vacated the fee award, and remanded the case for further proceedings in an unpublished opinion. *Brindle v. Rogers*, 328 Ga. App. XXIV (Case No. A14A0676) (2014).

Following additional hearings on Rogers' renewed motion for fees, the trial court awarded him an additional $55,726, for a total award of $198,382 in fees and expenses, but against only Cohen, not Brindle. We granted Cohen's application for discretionary appeal, and he argues that the trial court abused its discretion by declining to reconsider the issue of liability for the fee award and by awarding fees and expenses to Rogers. This Court should reverse the award.

1. Under the common law, an award of attorney fees is generally not allowed as part of damages. Because any statute awarding attorney fees is in derogation of common law, it must be strictly construed against the award of such damages. (Footnotes and punctuation omitted.) *Doster v. Bates*, 266 Ga. App. 194, 195 (1) (596 SE2d 699) (2004).

> Under the American Rule generally applicable in our legal system parties are responsible for their own attorney fees and expenses of litigation (*Vogtle v. Coleman*, 259 Ga. 115 (376 SE2d 861) [(1989)]), but legislation has provided some exceptions to this rule. In this state, the major exceptions to the American Rule arise in cases when a party has asserted unwarranted claims, engaged in improper defensive tactics,

4

acted in bad faith, been stubbornly litigious, or has caused unnecessary trouble and expense. In these circumstances, the General Assembly has enacted legislation that allows the awards of attorney fees and expenses of litigation to the aggrieved party under OCGA §§ 51-7-81 and 9-15-14.

*Williams v. Binion*, 227 Ga. App. 893 (1) (490 SE2d 217) (1997).

The trial court here awarded fees and expenses under OCGA § 9-15-14 (b), which authorizes a trial court in its discretion to award fees if an action lacked substantial justification — defined in the statute as "substantially frivolous, substantially groundless, or substantially vexatious" — or if a party or attorney unnecessarily expanded the proceeding by other improper conduct, such as discovery abuse.[2] We review such an award for abuse of discretion. *Haggard v. Board of Regents*, 257 Ga. 524, 527 (4) (c) (360 SE2d 566) (1987).

When a trial court exercises its discretion to award such attorney fees and costs, "it is incumbent upon the court to specify the conduct upon which the award is made." *Hall v. Monroe County*, 271 Ga. App. 895, 897 (2) (611 SE2d 120) (2005).

---

[2]In contrast, OCGA § 9-15-14 (a) directs a mandatory fee award for asserting "a claim, defense, or other position with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claim, defense, or other position." We review awards under this subsection under the "any evidence" standard. *Williams v. Warren*, 322 Ga. App. 599, 602 (1) (745 SE2d 809) (2013).

For example, an award of fees to a defendant "for having to defend himself against the spurious claims and groundless [c]omplaint initially filed by the [p]laintiff" was insufficient to affirm the fee award. *Johnston v. Correale*, 285 Ga. App. 870, 870-871 (1) (648 SE2d 180) (2007). To permit meaningful appellate review, the trial court's fee award must point out examples of the respondent's conduct that support the award under the standards set forth in OCGA § 9-15-14. *La Petite Academy v. Prescott*, 234 Ga. App. 32, 34 (2) (506 SE2d 183) (1998). But the trial court need not cite "specific testimony, argument of counsel, or any other specific factual reference" in its order awarding fees under OCGA § 9-15-14. *Century Center at Braselton v. Town of Braselton*, 285 Ga. 380, 381 (1) (677 SE2d 106) (2009) (evidence of misconduct by respondent's counsel in seeking an interlocutory injunction was sufficient to support fee award and established that trial court did not abuse discretion).

For purposes of this appeal, the relevant facts are that Brindle previously worked for Rogers. In the summer of 2012, she resigned and her attorney sent Rogers a letter contending that Brindle had employment-related sexual harassment claims against him that were documented by audio and video recordings. Following the receipt of the letter, Rogers' counsel requested and obtained a face-to-face meeting with Brindle's attorneys on August 2, 2012. Rogers then asked Brindle to engage in

6

formal mediation proceedings and selected the mediator. The parties and their counsel signed a contract agreeing that "[a]ll that occurs during the mediation process shall be confidential and may not be recorded and shall not be revealed in any subsequent legal proceedings or otherwise."

During the mediation proceedings on September 14, 2012, after Brindle's counsel upon request named a dollar figure for settlement purposes, Rogers filed a John Doe suit in Cobb County, where Brindle resided, for extortion, invasion of privacy, and intentional infliction of emotional distress related to the recordings. Rogers moved the Cobb County court to seal the case, but on September 19, 2012, the court denied the motion, finding it moot because Rogers had included sufficient information within the John Doe complaint for his identity to be determined.

Also on September 19, 2012, Brindle filed suit against Rogers in his resident county of Fulton, raising her employment-related claims. Later that day, Rogers filed an amended complaint in Cobb County, using his and Brindle's real names and asking the Cobb County court to take possession of and limit access to certain evidence in the case. He also filed another motion to seal the record. Rogers was personally served with the Fulton County complaint on September 20, 2012.

Litigation proceeded in both Cobb and Fulton Counties for 21 days. For example, on September 24, 2012, the Cobb County court held a hearing on Rogers' second motion to seal the record, but suspended it when the parties informed the court that they were attempting to negotiate a consent order that would address both the motion to seal and other matters. On September 28, 2012, the Cobb County trial court signed a consent order providing that the parties agreed that the case should be kept under seal and that they would not file dispositive motions until they completed discovery, which could be used in either the Cobb County or the Fulton County actions. Brindle agreed to waive service, and both parties agreed about how to handle certain discovery issues. The Cobb County consent order specified that the parties were "not attempting by this Order to address what information may be disseminated [in the civil action] pending in the State Court of Fulton County," and provided that the order would remain in effect until further court order or discovery ended, whichever came first.

A week later, on October 5, 2012, Rogers moved the Fulton County court to seal its record. On October 9, the Fulton County court issued an order temporarily sealing the record and setting a motion hearing on the next day. At the end of that hearing, the trial court announced that it was granting Rogers' motion to seal the

8

record and directed Rogers to draft an order containing certain findings. Brindle dismissed her Fulton County suit without prejudice the next day, October 10, 2012, then filed an answer and counterclaim in the Cobb County suit that mirrored her Fulton County complaint.[3]

On November 26, 2012, Rogers filed a motion in the Fulton County court seeking an award of attorney fees and expenses of litigation under OCGA § 9-15-14 (a) and (b). Rogers argued that he was entitled to a mandatory fee award under OCGA § 9-15-14 (a) because Brindle filed suit in Fulton County instead of a counterclaim in

---

[3]The trial court's fee award insinuates that Cohen was responsible for leaking news of the suit to the media in violation of the order sealing the record. But no judge has ever found that Brindle or her counsel leaked that information. To the contrary, a reporter from the paper that first broke the story said in an affidavit that she found out about the case from a male caller who was not one of Brindle's lawyers. Rogers' counsel told the Cobb County court that a reporter from the Fulton County Daily Report who called for comment said he had received a copy of the Fulton County complaint through the mail in an unmarked envelope and did not know who sent it. And after Rogers filed a motion for contempt in Cobb for violating the order sealing the record and the Cobb court issued an order directing Brindle and her counsel to show cause why they should not be adjudged in civil contempt for violating the sealing order, Rogers withdrew his motion for contempt in January 2012 without obtaining a ruling on whether Brindle or her counsel gave information to the media while that case was sealed. In Fulton County, Rogers' motion for contempt was never ruled on; in fact, in the fee award at issue here, the trial court disallowed $43,994 for services connected with Rogers' motion for contempt. Both the Fulton and Cobb courts ultimately lifted the sealing orders upon Rogers' request. The litigation in Cobb County continues. See *Cohen v. Rogers*, 338 Ga. App. 156 (789 SE2d 352) (2016), cert. denied, Feb. 2, 2016..

9

Cobb County, and was entitled to a discretionary award of fees under OCGA § 9-15-14 (b) because Brindle declined to consent to sealing the record in Fulton County, she failed to notify him via email of her dismissal without prejudice, she filed an application to appeal the order sealing the record that was not under seal, and she filed a premature notice of direct appeal. Brindle opposed the motion for fees, and the parties filed additional material addressing the motion.

In May 2013, the Fulton County court held a two-day hearing on Rogers' motion for fees and expenses. In an order issued on May 23, 2013, the court awarded Rogers $142,656.82 in attorney fees and expenses of litigation against both Brindle and Cohen under OCGA § 9-15-14 (b). Brindle and Cohen sought and were granted an application for discretionary appeal of the fee award. In the unpublished opinion referred to previously, this Court vacated the award of fees and expenses under OCGA § 9-15-14 (b), determined that the trial court erred in awarding fees related to appellate and prelitigation conduct, and remanded the case to the Fulton County court for further proceedings. *Cohen v. Rogers*, Case No. A14A0202. We directed the trial court "to make express findings of facts and conclusions of law as to the basis for an award of reasonable and necessary attorney fees and expenses of litigation for conduct

10

undertaken before that court, pursuant to OCGA § 9-15-14, specifying the amount of such award, if any." Opinion, pp. 4-5.

After remand, the case was assigned to a different judge. Rogers filed a renewed motion for attorney fees, arguing that because this Court vacated but did not reverse the trial court's fee award, the issue of liability had been decided and was the law of the case. The requested fee award of $257,871 included $133,526 (the amount of fees previously awarded), minus $9,130 for work done before suit was filed and in the appellate court, plus $124,345 for post-remittitur work on Rogers' renewed attorney fee motion and expenses.

Brindle and Cohen separately opposed the renewed motion for fees and expenses in November 2014. Cohen requested an evidentiary hearing, to which Rogers objected; the trial court set a hearing; and the parties filed pre-hearing briefs on February 16, 2015.

On the first day of the hearing in February 2015, the trial court said it would not reconsider the issue of Cohen's liability for sanctions but would consider evidence regarding the amount of the fee award. The parties filed more pleadings and evidence, and in April 2015 the trial court held the second day of the post-remittitur hearing. After additional briefing in August and October 2015, the trial court issued a thorough

and detailed order in March 2016 granting Rogers' renewed motion for fees and expenses under OCGA § 9-15-14 (b), but against only Cohen.

The trial court held first that, contrary to the initial fee award, nothing Brindle herself had done warranted a fee award against her individually, and denied Rogers' motion for an award of fees and expenses against Brindle. The court then concluded that, other than fees sought in three discrete categories, $198,383 of the attorney fees Rogers sought "were reasonable and necessarily related to the Fulton Action and resulted from either the conduct of Cohen in bringing this action and then unnecessarily prolonging the proceedings, or were incurred pursuing an attorney fee award pursuant to OCGA § 9-15-14." The order did not address the conduct of Brindle's other two counsel of record, Butters and Hylton Dupree.

This Court granted Cohen's application for a discretionary appeal of the fee award against him.

Considering the trial court's liability determination, while we accept the trial court's factual findings unless they are clearly erroneous, we must review for abuse of discretion the trial court's award of over $198,000 in attorney fees against Cohen alone. *Haggard*, 257 Ga. at 527 (4) (c). "[A]lthough 'abuse of discretion' is a deferential standard of review, it is not toothless," and it is less deferential than the

"clearly erroneous" test. *Reed v. State*, 291 Ga. 10, 13 (3) (727 SE2d 112) (2012) (citation and punctuation omitted.)

As previously discussed, an award of fees is warranted if the trial court finds that an attorney brought an action that "lacked substantial justification" or was "interposed for delay or harassment," or "unnecessarily expanded the proceeding by other improper conduct." OCGA § 9-15-14 (b).

In its conclusions of law resulting in an award to Rogers of $198,383 in fees and expenses, the trial court stated in a footnote that Cohen's conduct related to the July 2012 letter "or any other conduct outside the proceedings before this Court while this action was pending" was not sanctionable, but that "such conduct outside this Court serves as circumstantial evidence that *conduct in this Court* was undertaken for an improper purpose." (Emphasis in original.) While the trial court in this footnote clearly intended to indicate its compliance with this Court's mandate to consider only conduct before that court, the order itself belies that compliance by basing the award on conduct that was not before it, as discussed further infra. Additionally, the trial court added facts related to a contempt motion Rogers withdrew before it was ruled on and a show-cause order related to media leaks that the court never ruled on.

13

The trial court made 40 findings of fact related to conduct that began with the demand letter, covered proceedings in Cobb, the media, and the appellate courts, and continued through the post-remittitur briefs and hearings. The first thirty facts echoed those in the first order, with two completely new findings: that in October 2012, the trial court had entered a show-cause order "directing counsel and the parties to disclose any role they may have had in the leaking of pleadings to the press," and that in December 2012, Rogers filed a motion for contempt alleging that Brindle and her counsel violated the court's order sealing the record, although no hearing was held on the motion.

The trial court also added to the previous order a truncated quotation between the trial court and Butters from the hearing on Rogers' motion to seal, the fact that Brindle filed an answer and counterclaim in the Cobb County suit after dismissing this lawsuit, identified Cohen, rather than "Brindle and her counsel," as having filed the Supreme Court application, and the fact that the Supreme Court emailed Brindle's application and exhibits to a reporter who had received an anonymous tip, resulting in public disclosure of the sealed documents.[4]

---

[4]Also new are eight findings of fact recounting the proceedings related to the fee motion, both before and after this Court's remittitur.

14

The order also lists 18 categories of legal activity by Rogers' counsel for which Rogers sought an award, omitting the previously included category of researching the demand letter and adding the activities associated with the unsuccessful motion for contempt and the extensive post-remittitur work on Rogers' renewed fee motion seeking an additional $124,345 in legal fees.

The only conduct that occurred before the trial court in Fulton County consisted of filing the complaint, opposing sealing the record, delaying the dismissal of the suit after acknowledging service in Cobb County, and opposing and appealing the fee motion. The trial court abused its discretion in awarding fees based on each of these categories of actions.[5]

(a) *Filing the complaint.* The Fulton County court reviewed proceedings occurring before suit was filed, after it was dismissed, and before other courts. After reviewing Cohen's conduct before suit was filed and in other courts, the trial court determined that conduct that did not take place before the Fulton County court

---

[5]We note that Cohen was only one of three lawyers who represented Brindle, and not the only lawyer who argued in opposition to Rogers' motion to seal the record in Fulton County. While Rogers outlines in his appellate brief some of the reasons he thinks only Cohen is responsible for paying his fees, the trial court's order contains no explanation for singling him out.

constituted circumstantial evidence that Cohen's conduct in Fulton was undertaken for an improper purpose. This conduct, the court said, led it to conclude that "the only logical purpose" for filing in Fulton County and declining to agree to seal the record was "to avoid the Cobb Consent Order sealing the record, and to maintain and make good on a threat, as expressed in his July 16, 2012 . . . letter, to publicly embarrass Rogers."

But the Cobb consent order sealing the record and addressing discovery matters was entered on September 28, 2012, nine days *after* Brindle filed her complaint in Fulton County. Therefore, Brindle could not have filed suit in Fulton County to avoid complying with the Cobb County consent order, and the trial court abused its discretion in so finding.

Cohen also argues that the Cobb suit was a nullity when he filed in Fulton County because the Cobb suit only identified the parties by pseudonyms. Therefore, he asserts, filing suit in Fulton County — where the alleged acts forming the basis for her complaint occurred — was not conduct lacking substantial justification under OCGA § 9-15-14 (b). In September 2012, whether a complaint filed under a pseudonym could be "pending" was not settled law. While our Supreme Court held in 1983 that "pleadings may be amended to substitute a named party plaintiff when suit

16

is filed in the name of a party which is not a legal entity . . . but is reasonably recognizable as a misnomer," *Block v. Voyager Life Ins. Co.*, 251 Ga. 162 (1) (303 SE2d 742) (1983), a "John Doe" plaintiff is not a misnomer. We previously held under the uninsured motorist statute, OCGA § 33-7-11, that a plaintiff cannot sue a John Doe motorist unless the motorist is unknown. *Kannady v. State Farm Mut. Auto. Ins. Co.*, 214 Ga. App. 492 (448 SE2d 374) (1994).

Whether a suit brought by an anonymous plaintiff was a nullity that could not be revived by amendment after the statute of limitation had run was addressed in July 2014, in *Doe v. Archdiocese of Atlanta*, 328 Ga. App. 324 (761 SE2d 864) (2014). This Court in *Doe* reversed a trial court's dismissal of such a suit. After acknowledging that "[i]n general, Georgia law mandates that parties to a lawsuit identify themselves in their respective pleadings," we "reject[ed] the [defendant's] overly rigid argument that, because Doe was not publicly identified, her complaint failed to import a natural person and should be treated as a nullity." Id. at 327 (1).

Absent controlling authority to the contrary when Brindle filed her complaint, her argument that Rogers' first-filed Cobb County John Doe complaint was a nullity "was not substantially frivolous, substantially groundless, or substantially vexatious." See *Patterson v. Hragyil*, 322 Ga. App. 329, 333 (1) (744 SE2d 851) (2013)

17

(reversing fee award for plaintiff, whose failure to accept informal paternity test did not render substantially frivolous her continued efforts to reach agreement with alleged father). See also *Brown v. Gadson*, 298 Ga. App. 660, 661 (680 SE2d 682) (2009) (claims for a paternity ruling and for child support did not lack substantial justification, even though plaintiff did not prevail on her argument); *DeKalb County v. Adams*, 263 Ga. App. 201, 203-204 (587 SE2d 302) (2003) (although county's argument — that the court lacked authority to enforce its civil contempt order after the parties' settlement agreement expired — had been decided against it, the argument did not lack substantial justification and did not support fee award); OCGA § 9-15-14 (c) ("No attorney or party shall be assessed attorney[] fees as to any claim or defense which the court determines was asserted by said attorney or party in a good faith attempt to establish a new theory of law in Georgia if such new theory of law is based on some recognized precedential or persuasive authority.")

Further, "OCGA § 9-15-14 (b) does not specifically authorize an award of attorney fees based upon a finding that litigation was instituted for an 'improper purpose' or a finding that a party has acted in bad faith." *Citizens for Ethics in Government v. Atlanta Development Auth.*, 303 Ga. App. 724, 738 (5) (694 SE2d 680) (2010) (footnote omitted). Finally, "an action is not a 'pending' suit until after

service of process is perfected." *Steve A. Martin Agency v. PlantersFIRST Corp.*, 297 Ga. App. 780, 781 (1) (678 SE2d 186) (2009).

Thus, when Brindle filed her complaint in Fulton County, nothing was "pending" in Cobb County that required her to file a compulsory counterclaim in Cobb.[6] Accordingly, the trial court also abused its discretion by finding that, because Cohen "did not wait and file a counterclaim in the Cobb Action at a time he believed it was ripe, instead of proceeding to file the Fulton Action," his conduct in filing the Fulton County complaint lacked substantial justification, unnecessarily expanded the proceedings, or was undertaken for delay.

(b) *Opposing sealing the record.* The trial court found that Cohen had consented to sealing the record in Cobb County, but took "a contradictory and inconsistent position in this Court by refusing to consent and opposing Rogers' efforts to seal the Fulton Action." And, the trial court held, Cohen's dismissal of the Fulton County case the day after the Fulton County court orally announced its decision to seal the record "further evidences that the Fulton Action was brought

---

[6] "A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." OCGA § 9-11-13 (a).

19

solely for the purpose of avoiding the sealing order in the Cobb Action." Thus, Cohen's only purpose for refusing to consent to sealing the record, the trial court held, was "to delay the sealing and cause greater inconvenience, harassment and embarrassment to Defendant Rogers, and such conduct greatly and unnecessarily expanded the proceedings." The court concluded that, because Cohen's reasons for refusing to consent to Rogers' motion to seal the record in Fulton County were "contradictory and inconsistent" with his consent to seal the record in Cobb County, his refusal to consent to seal the Fulton County record unnecessarily expanded the proceedings and justified a fee award under OCGA § 9-15-14 (b).

During the October 9, 2012, hearing, Rogers argued that his privacy interests outweighed the public's interest, and pointed out Brindle's consent to seal the record in Cobb County. Cohen and one of Brindle's other two attorneys, John Butters, argued on Brindle's behalf in opposition to the motion to seal the Fulton County record. Butters explained that Brindle would not consent to seal the record in Fulton County but did in Cobb County because the litigants were in different postures and the causes of action were different. The Cobb County case belonged to Rogers, Butters argued, and Brindle did not care that Rogers wanted to seal his lawsuit against her, whom Butters described as a victim, because Brindle intended to proceed with her

suit in Fulton County. Butters also pointed out that the Cobb County order contained no finding that Rogers' privacy interest outweighed the public's interest in open court records, which was necessary for a proper order sealing a record.

Additionally, he argued, the areas of agreement in each venue varied. For example, Butters argued, Rogers would not agree in Fulton County to forego filing dispositive motions until after discovery was completed, as he had in the time-limited Cobb County consent order. Brindle's lawyers noted that Rogers had been aware of the existence of that evidence since receiving Cohen's letter months before, and no legal emergency existed that required immediate action.[7] Butters told the trial court that Brindle had always agreed not to disseminate any of the recordings at issue to anyone, and Cohen noted that the existence of the case was already public, per the Cobb County trial court's order denying Rogers' motion to seal the John Doe case.

---

[7]Brindle moved this Court to supplement the appellate record with a written order entered by a different Fulton County trial court on November 30, 2016, dismissing indictments against Brindle, Butters, and Cohen for conspiracy to commit theft by extortion and crimes of unlawful surveillance. Rogers referred in his post-hearing trial court brief to an investigation of "Brindle and Cohen's" video evidence by the Fulton County District Attorney's Public Integrity Unit, and responded to the motion to supplement with a copy of the State's December 8, 2016, notice of appeal of that order. However, "[w]e are not authorized to consider that [evidence] as we are limited to the record in the case sub judice." *Tingle v. Arnold*, 129 Ga. App. 134, 139 (199 SE2d 260) (1973).

Brindle's opposition to Rogers' motion to seal the record was not frivolous and did not lack substantial justification. An order sealing the record must be supported by a finding that the public's interest in open records is outweighed by the party's privacy interest. *In re Motion of the Atlanta-Journal-Constitution*, 271 Ga. 436, 438 (519 SE2d 909) (1999). See also Uniform Superior Court Rule 21 ("All court records are public and are to be available for public inspection unless public access is limited by law or by the procedure set forth below."[8]

> In the State of Georgia, the public and the press have traditionally enjoyed a right of access to court records. Public access protects litigants both present and future, because justice faces its gravest threat when courts dispense it secretly. Our system abhors star chamber proceedings with good reason. Like a candle, court records hidden under a bushel make scant contribution to their purpose.

*Atlanta Journal v. Long*, 258 Ga. 410, 411(1) (369 SE2d 755) (1988).

"Although the rule creates a presumption that all court records are to be open, it also provides for a limitation on that right when the privacy of a party clearly outweighs the public right to know." *Savannah College of Art & Design v. School of Visual Arts*, 270 Ga. 791, 792 (515 SE2d 370) (1999). While the subject matter of the

---

[8]"The Uniform Rules for the Superior Courts shall be applicable in State Courts." Uniform State Court Rules, Note.

recordings and the claims against Rogers is sensitive, a party's embarrassment is not a sufficient ground upon which to seal court records.

> By their nature, civil lawsuits quite often cause litigants to experience an invasion of privacy and resulting embarrassment, yet that fact alone does not permit trial courts to routinely seal court records. In an order sealing a court record, a trial court must set forth factual findings that explain how a privacy invasion that may be suffered by a party or parties seeking to seal a record differs from the type of privacy invasion that is suffered by all parties in civil suits. Otherwise, the trial court is not justified in closing the record from public scrutiny.

*In re Motion of the Atlanta-Journal-Constitution*, 271 Ga. at 438 (footnote omitted) (reversing order to seal that failed to set forth factual findings explaining how that movant's privacy invasion differed from that suffered by all parties in civil suits).

Thus, regardless of whether Brindle consented to seal the record or not, the trial court in this case was required to hold a hearing and enter an order containing findings of fact establishing whether Rogers' interest in maintaining his privacy exceeded the public's interest in open court records. *In re Motion of the Atlanta-Journal-Constitution*, 271 Ga. at 438. The trial court must also specify what part of the record is sealed, as well as the duration of the sealing and the reasons. *Atlanta Journal v. Long*, 258 Ga. at 411 (1) (reversing order to seal certain

23

prejudgment records in suit against the Catholic Diocese of Savannah and denial of newspapers' motion for access to records).

Reviewing the record as a whole and considering the ongoing, fast-paced, intertwined but distinctive proceedings in the Fulton and Cobb County cases, the trial court abused its discretion in finding that Cohen's failure to consent to sealing the record in Fulton County, conduct undertaken in conjunction with his co-counsel, lacked substantial justification or was interposed for delay. See *Ingram v. Star Touch Communications*, 215 Ga. App. 329, 330 (1) (450 SE2d 334) (1994) ("Absent extraordinary circumstances, . . . the failure of a party to agree to telephonic depositions cannot form the basis of an award of attorney fees and expenses under OCGA § 9-15-14. Such a decision is a matter of tactics, strategy and advocacy based upon factors which may change during the course of the litigation.")

(c) *Delaying the dismissal.* The trial court found that, because Brindle agreed to acknowledge service in Cobb County as part of the consent order entered in that court on September 28, 2012, Cohen's subsequent delay in dismissing the Fulton County case was sanctionable conduct because it unnecessarily expanded the proceedings. The Fulton County case was dismissed without prejudice on October 10, 2012.

As is obvious from the limited recitation of proceedings in the Fulton and Cobb actions, litigation before both courts moved quickly after Rogers filed the Cobb County complaint. Lawyers for both sides were filing motions, responding to motions, preparing for hearings, attending hearings, and drafting and reviewing proposed orders seemingly nonstop for weeks at a time. The trial court's conclusion that delaying the dismissal for 12 days after agreeing to waive service — 7 business days, excluding weekends and the Columbus Day holiday — unnecessarily expanded the proceedings and was "substantially frivolous, substantially groundless, or substantially vexatious" that justified the attorney fee award was an abuse of discretion under OCGA § 9-15-14 (b).

2. Additionally, even if the trial court did not abuse its discretion in finding Cohen's conduct sanctionable, it erred in the amount of fees awarded. In the fee order on appeal, the trial court found that Rogers was entitled to fees for all of the time his counsel spent pursuing his fee motion, including the time spent to obtain the first, now-vacated, award. The trial court stated, "The fact that Cohen and Brindle chose to strenuously oppose the Initial Fee Motion, appeal the Order Granting Fees, and fully re-litigate the fee issue in this Court on remand does not negate Rogers' entitlement to fees."

"[I]n awards under OCGA § 9-15-14 (b), "the trial court must limit the fees award to those fees incurred because of the sanctionable conduct." (Punctuation omitted.) *Trotter v. Summerour*, [273 Ga. App. 263, 267 (2) (614 SE2d 887) (2005)]." *Franklin Credit Mgmt. Corp. v. Friedenberg*, 275 Ga. App. 236, 242 (2) (d) (620 SE2d 463) (2005) (Footnotes omitted.). Here, Brindle's opposition to the motion for fees and the first fee award resulted in this Court vacating that award, and her continued opposition to the motion after the case returned to the Fulton County court were completely successful as to her personally. But neither the evidence nor the trial court's order reveals how much time Rogers' counsel spent in his initially unsuccessful pursuit of a fee award, much of which was surely repeated after remand to reach $124,000 more fees.

Additionally, despite submitting at least five affidavits including hundreds of pages of somewhat itemized bills and testifying at length during the evidentiary hearing, Rogers failed to support his claims that he incurred almost $200,000 of necessary legal fees because of sanctionable conduct attributed solely to Cohen,[9] evidence about the fees incurred for conduct before the Fulton County court is insufficient to sustain this award. The calculations in the order begin with Rogers's total fee request of $257,871.

---

[9]The second fee affidavit appears to be the first one in the record.

26

Rogers derived that request by subtracting two sums from the vacated award of $142,656, purportedly in compliance with this Court's direction, then adding $124,345 for post-remand fee litigation, which includes at least $40,000 to prepare visual aids to use during the post-remand hearings. The trial court then deducted various sums from the award, and concluded that the remaining lump sum of $198,383 in fees was incurred for Cohen's conduct that violated the statute.

It is impossible to tell from the trial court order or from Rogers' evidence how much time his lawyers spent on any particular category of conduct. While Rogers complains in his brief about "micro-apportionment" and warns of trial courts becoming "green-eyeshade accountants," the act requires the movant to prove how much he paid his counsel for each sanctionable act. See OCGA § 9-15-14 (d).

A review of the affidavits and bills Rogers submitted to support his motion for fees reveal unresolvable factual discrepancies. For example, in the January 2015 "Sixth Affidavit of [Rogers' Counsel," counsel stated that all fees billed before September 29, 2012 had been removed from the total amount sought.[10] But "all fees billed" before that date were not removed, as the affidavit then indicates by the following sentence:

---

[10]The Cobb trial court entered the consent order, which included agreements about discovery, motions timing, document confidentiality, and sealing that record, on September 28, 2012. Brindle also agreed to waive personal service.

27

Prior to September 29, 2012, the only fees remaining which have been sought for reimbursement, [sic] pertain to the investigative and legal research work done to address the defenses to Ms. Brindle's accusations contained in the extortion letter of July 16, 2012, which then was used in our arguments supporting the sealing of the Fulton Action.

Rogers' counsel conceded during cross-examination during the evidentiary hearing that some of the more than $250,000 sought included work done pre-filing, in response to the demand letter, and those fees were permissible because he used that research in his motion to seal the record.

None of the billing records submitted detail the pre-litigation research to which Rogers' counsel refers in both the affidavit and his testimony. The only entries in the September 2012 bill add up to about $8,800, which is then subtracted from the total amount sought. Perhaps those fees are detailed in the Cobb billing records, but the trial court granted Rogers' motion to quash Brindle's notice to produce those bills.

Another review reveals numerous redactions in the bills' line items. Rogers defends those redactions as necessary to maintain attorney-client privilege and avoid revealing his strategy to Brindle related to the Cobb lawsuit he brought against her. In other words, Rogers wants reimbursement for undocumented research time but argues

that he need not be required to show the subject matter of the research because it is confidential.

For the foregoing reasons, I respectfully concur in part and dissent in part from the majority opinion.

A16A1858. COHEN v. ROGERS.

MCFADDEN, Presiding Judge, concurring in part and dissenting in part.

I concur in Division 1. I agree with Presiding Judge Barnes's dissent in Division 2. I write separately to emphasize that the State Court of Fulton County failed to comply with our earlier opinion: it failed to set out sufficient findings about conduct "before *that court*." *Brindle v. Rogers*, 328 Ga. App. XXIV, at 4 (1) (Case No. A14A0676) (2014) (emphasis in original). I write also to address the standard of review: the Fulton County court's order is premised on a misreading of OCGA § 9-15-14 (b) and so is, to that extent, subject to de novo review.

1. *Failure to comply with our earlier opinion.*

Our earlier opinion charged the Fulton County court to enter findings on remand about conduct "before *that court*." *Brindle*, supra at 4 (1) (emphasis in original). Because the Fulton County court failed to meet that charge, we must reverse and remand.

We "vacate[d] the [prior] award and remand[ed] the case for the [Fulton County] court to make express findings of fact and conclusions of law as to the basis for an award of reasonable and necessary attorney fees and expenses of litigation for conduct undertaken before *that court*, pursuant to OCGA § 9-15-14, specifying the

conduct which would authorize the award and the amount of such award, if any." *Brindle*, supra at 4-5 (1) (citations omitted; emphasis in original). Because the findings and specifications now before us are "too vague and conclusory to permit any meaningful appellate review of the award," we must again remand for further findings. See *Georgia Dept. of Transp. v. Douglas Asphalt Co.*, 295 Ga. App. 421, 424 (1) (672 SE2d 899) (2009) (citation and punctuation omitted).

I note at the outset that it is doubtful that any findings could justify anything close to the six-figure amounts the Fulton County court has been awarding. This litigation has swollen to near-Jarndycian proportions, but its bulk is in the State Court of Cobb County. I don't see how its Fulton County tendril can sustain anything close to what has been awarded. The Cobb County action was filed on September 14, 2012, and continues to this day. The Fulton County action was filed on September 29, 2012, and dismissed on October 10, 2012 — 21 days later. The award now before us is for $198,383.52. That's nearly $10,000 a day. Even allowing for fees incurred seeking fees, it is difficult to imagine how such an award could be "reasonable and necessary." See OCGA § 9-15-14 (d).

So setting out findings that would authorize us to hold, after "meaningful appellate review," that this award is "reasonable and necessary" was a daunting

2

challenge. See OCGA § 9-15-14 (d); *Douglas Asphalt Co.*, supra, 295 Ga. App. at 424 (1). It was all the more daunting, the appellant tells us, because the appellee's fee records are not broken down by sanctionable acts. The appellee's defense of the order does not rise to the challenge.

And the order suggests that the trial court was well and truly daunted. It recites that the "[l]egal activity engaged in by Rogers'[s] counsel, for which an award is sought, includes *but is not limited to* the following[.]" (Emphasis supplied.) (The italicized language, of course, contributes less than nothing to meaningful appellate review.) There follows a list of 18 tasks. But the list sets out no dates, no specifications of time spent, no hourly rates, and no identifications of the persons who performed the tasks. Most importantly for purposes of our review, there is nothing to enable us to determine whether the tasks related to proceedings in the Fulton court or in the Cobb County court.

From the starting point of Rogers's $257,871.52 fee request, the award is derived by deducting amounts set out in three more lists. Each entry on those lists provides the name and initials of an attorney, a date, and an amount billed — nothing else. The lists break down the deductions into three categories. For each list we are provided a "Total Deduction for this Category." The categories and their total

3

deductions are: "Time Spent on the Motion for Contempt," $43,994.50; "Services Not Explained in Sufficient Detail," $14,231.50; and "Other Fees and Expenses Disallowed," $1,262.00. The award of $198,383.52 is the remainder of Rogers's total fee request minus those deductions. The category "Other Fees and Expenses Disallowed" is composed of tasks that are "related in whole or in part to proceeding in the Cobb [a]ction or appear related to nonlegal tasks, such as contact with the media."

So the Fulton County court's compliance with our direction that on remand it "make express findings of fact and conclusions of law" sufficient to ensure that the award is only "for conduct undertaken before *that court*," *Brindle*, supra at 4 (1) (emphasis in original), consists of conclusory statements. There is no explanation of the amounts allocated to pre-litigation activities and litigation in the Supreme Court. As to the Cobb County court — where the bulk of this litigation has taken place — we have only a bald assertion that the fees properly allocated are some unspecified amount less than $1,262.

That is not remotely sufficient. It does not enable us to perform a "meaningful appellate review" of whether the amount of the award is "reasonable and necessary." *Douglas Asphalt*, supra at 424 (1). The award cannot be sustained.

4

2. *Standard of review.*

As the majority correctly observes, it is well settled that we review fee awards under subsection (b) of OCGA § 9-15-14 for abuse of discretion; and abuse of discretion is a deferential standard of review. But as the majority also correctly observes, even under that standard, we review legal holdings de novo. And as we have written about subsection (a) in particular, the applicability of OCGA § 9-15-14 sometimes depends "upon an assessment of the state of the law at the time a party advanced a legal argument that, another party now contends, forms the basis for an award of attorney fees. Such an assessment of the state of the law, we think, itself presents a question of law, and we usually do not defer to trial courts about pure questions of law." *Gibson Constr. Co. v. GAA Acquisitions I, LLC*, 314 Ga. App. 674, 676 (725 SE2d 806) (2012) (citation omitted).

The Fulton County court relies on the clause of subsection (b) of OCGA § 9-15-14 that authorizes a fee award because an "action, or any part thereof, was interposed for delay or harassment[.]" The Fulton County court finds in that clause authority to sanction a party on the basis of purpose, motivations, or intent — regardless of the action's legal merit. That clause does appear, at first glance, to authorize an award regardless of legal merits; unlike subsection (a) and unlike the two

5

clauses of subsection (b) that parallel it, it contains no express requirement of "a complete absence of any justiciable issue of law or fact," of "lack[ ] [of] substantial justification," or of "improper conduct." See OCGA § 9-15-14 (a), (b).

But the clause cannot be construed so broadly. Such a construction would render the authority to impose fees wholly unconstrained. Almost any motion, pleading, or argument will to some degree subject the opposing party to delay or harassment. And the Fulton County court's overbroad reading of subsection (b) is foreclosed by the subsection that follows:

> No attorney or party shall be assessed attorney's fees as to any claim or defense which the court determines was asserted by said attorney or party in a good faith attempt to establish a new theory of law in Georgia if such new theory of law is based on some recognized precedental or persuasive authority.

OCGA § 9-15-14 (c). Per force, neither may fees be assessed for claims or defenses solidly grounded on settled law or assessed on the basis of ad hoc standards. A subjective evaluation of motivation is not enough.

So the analysis in Judge Barnes's dissent of the merits of appellant's legal arguments, of the legal justification for appellant's actions, and of the Fulton County court's criticism of those arguments and actions are all on point. As Judge Barnes ably

6

demonstrates, appellant's actions and arguments were solidly grounded on settled law — or as to one issue, grounded on a fair argument about a then-unsettled question of law. The sanctions order must therefore be reversed.

As Judge Barnes explains in her dissent, appellant had a legitimate basis for arguing that because the Cobb County action was a "John Doe" action, it was a nullity. I add that it was wholly proper for appellant to aggressively and creatively resist appellee's amazingly successful effort to shift the focus of this case to whether Brindle subjected Rogers to what he calls "sextortion," instead of whether Rogers subjected Brindle to sexual harassment.

A central conceit of Rogers's claim is that the demand letter was extortion. That contention is entirely without merit. "Under Georgia law, threats to take legal action provide no basis for duress and are not actionable in tort." *Mobley v. Coast House, Ltd.*, 182 Ga. App. 305, 307 (355 SE2d 686) (1987) (citation omitted). It is of no consequence that — as such letters often do — the demand letter emphasized the collateral benefits of settlement. "'[T]hreats' associated with institution of a civil suit cannot and do not constitute duress and are not actionable in court." Id.

I add also that in sanctioning appellant for "circumventing" an order entered by another court and for refusing to consent to an extension of that order, the Fulton

7

court would add new uncertainty to the practice of law. I am aware of no authority delineating any such duties, at least not in this or any similar context. And I would hold that the trial court erred in undertaking — without citation of authority — to create such duties. If appellees violated the Cobb County consent order, the remedy is in the Cobb County court.

And I would hold unwarranted appellee's reliance on OCGA § 16-11-62, which criminalizes unlawful eavesdropping or surveillance. Georgia follows the one-party consent rule. See *State v. Birge*, 240 Ga. 501 (241 SE2d 213) (1978); *Mitchell v. State*, 239 Ga. 3, 4-5 (235 SE2d 509) (1977) (plurality). It is true that we have held that there are some instances in which the consent of a single party may not insulate that party from prosecution for a video recording. *Gavin v. State*, 292 Ga. App. 402, 404-406 (664 SE2d 797) (2008). But "*Gavin* does not hold and cannot be reasonably understood to hold that the participant's exception set forth in OCGA § 16-11-66 (a) has no application to video recordings that satisfy the criteria of that statutory exception." *State v. Madison*, 311 Ga. App. 31, 34 (2) (a) (714 SE2d 714) (2011).

Even if Brindle had violated OCGA § 16-11-62, that would not give Rogers a cause of action. See *Gobran Auto Sales v. Bell*, 335 Ga. App. 873, 877 (2) (783 SE2d 389) (2016) (finding no private cause of action for violation of penal statute where

8

statute did not expressly provide for such cause of action). At most Rogers could seek exclusion of the video recording from evidence. See *Ransom v. Ransom*, 253 Ga. 656, 659 (3) (324 SE2d 437) (1985). And that evidentiary issue may well have been mooted by Rogers's deposition testimony.

And I would vacate the Fulton County court's holding that appellant could be sanctioned for reporting Rogers's conduct to the police or for failing to disclose that report during negotiations. Criminal charges may not be used as bargaining chips in negotiations about civil cases. On remand, I would direct the Fulton County court, before reentering any such finding, to carefully consider Rule 3.4 (h) of the Georgia Rules of Professional Conduct, see Bar Rule 4-102 (d), which provides that a lawyer shall not "present, participate in presenting or threaten to present criminal charges solely to obtain an advantage in a civil matter."

Finally — given the unchallenged representation by appellant's counsel that there has never been any attempt to make the recordings public and that the recordings have never been released except to law enforcement, the court, and counsel — I am bemused by the extent of the Fulton County court's solicitude for Rogers's claims of embarrassment. Rogers entered into a long-term adulterous relationship with a much-younger woman who, as his employee, was in his power. Whether Brindle truly

9

consented to the relationship or was coerced is a central issue in the underlying case. Unless and until that issue is resolved in Rogers's favor, he may not be compensated for his bruised feelings.